No. 79,440

STATE OF KANSAS, *Petitioner*, v. THE HONORABLE STEVEN R. BECKER, JUDGE OF THE DISTRICT COURT, DIV. III, 27th JUDICIAL DISTRICT, *Respondent*.

(958 P.2d 627)

Opinion filed April 24, 1998.

*Alan D. Hughes*, assistant county attorney, argued the cause, and *Timothy J. Chambers*, county attorney, was with him on the brief for petitioner.

*Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for respondent David Proctor.

The opinion of the court was delivered by

DAVIS, J.: In this petition for writ of mandamus, the State seeks a declaration from this court that K.S.A. 1997 Supp. 22-3428(1)(a) mandates that a criminal defendant who has been acquitted on the basis of a mental defect or disease under K.S.A. 22-3221 be com-

mitted to the Larned State Security Hospital for safekeeping and treatment. The State asks this court to direct the Honorable Steven R. Becker to commit the defendant, David Proctor, under the provisions of 22-3428(1)(a).

The facts are not in dispute. David Proctor had been diagnosed as suffering from unipolar depression and had been on medication for this condition for approximately 10 years prior to the incident in this case. He had been hospitalized for the same condition on six prior occasions.

In August 1996, the defendant told his wife that something was wrong. He admitted himself to the Hutchinson Hospital psychiatric unit. His psychiatrist, Dr. Eve Hohly, conferred with him during his stay. On the morning of August 9, 1996, she testified that the defendant was preoccupied with some religious delusions. He was not in a security room at the time and did not appear to be imminently dangerous to the staff or himself.

Later that same day, Dr. Hohly received a report that the defendant had run or jumped into a window. She directed that the defendant be placed in a security room. Donald Ahrens, an orderly in the psychiatric unit, helped the defendant to the security room. Once in the security room, the defendant became agitated. Ahrens went into the room to try to calm him, but the defendant put his fingers in his ears and refused to listen. The defendant then stated, "Go ye and halt the nation and preach the word."

Ahrens testified that the defendant jumped up and announced that he was going to kill the nurse on duty. The nurse pushed the "panic button" to summon additional help, and Ahrens backed out of the room. The defendant came out of the room and began throwing punches at Ahrens. The defendant then ran to the fire door, ripped off a stainless steel bar that had been welded to the door, and severely beat Ahrens.

The defendant was charged with aggravated battery. He waived his right to a jury trial and gave notice of an insanity defense. The case proceeded to trial, with the defendant stipulating to the complaint and the State stipulating to the admission of a letter from Dr. Hohly stating that when the incident occurred, the defendant

was under a delusional belief that he was fighting Satan and should not be held responsible for his actions.

Based upon the stipulated evidence, the district court found that while the defendant had committed the aggravated battery, he was not guilty by reason of insanity. The case then proceeded with disposition.

Without objection from the State, the defendant presented the testimony of Dr. Hohly as well as the testimony of Karen Brown Soden, a nurse practitioner at the Larned State Hospital. Dr. Hohly testified that after the incident, the police transported the defendant to the Larned State Hospital. Brown Soden testified that the defendant was brought into the hospital in protective custody and was evaluated. During the time the defendant had been hospitalized, it was discovered that he was suffering from a bipolar disorder rather than unipolar depression. Brown Soden testified that the treatment for unipolar disorder is different from that for bipolar disorder.

Dr. Hohly testified that the defendant had previously been placed on an antidepressant for unipolar disorder but not on antipsychotic medication. She stated that placing someone with bipolar disorder on an antidepressant alone can increase that person's manic behavior. She testified that with the new antipsychotic medication, the defendant is well stabilized and has been able to return to work. She testified that the defendant was asymptomatic and that a return to Larned would be of little help. Further, it could be counterproductive in that it would take away his job, which is a stabilizing influence in his life.

Brown Soden testified that the defendant responded to his new medication quickly and his condition stabilized. He was released from the hospital on an outpatient basis 17 days after the incident. A court order was filed in Reno County District Court mandating that the defendant receive outpatient treatment. Brown Soden also testified that a return to Larned would be detrimental to the defendant's stability because it would impair his employment. In her opinion, the defendant was not a danger to himself or others at the time of his release. According to Brown Soden, if the defendant were sent back to Larned, he would undergo an evaluation similar

to one he had previously undergone, and his reports would be sent to and approved by the same person who approved his earlier release from Larned.

At the close of testimony, Judge Becker recognized that under K.S.A. 1997 Supp. 22-3428, he was required to commit the defendant. However, the judge determined that the defendant's case was unique in that he had already been committed to Larned, Larned had determined that he was no longer a danger to himself or others, and there had been a judicial determination that the defendant did not need to be hospitalized. Judge Becker, therefore, determined that the purpose of 22-3428 had been satisfied and that the defendant was eligible for conditional release under 22-3428(4). Judge Becker placed the defendant on conditional release.

The State initially filed this appeal as a question reserved. However, it dismissed the appeal and instead brought a petition for writ of mandamus.

K.S.A. 60-801 defines mandamus as "a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official state of the party to whom the order is directed, or from operation of law." Article 3, § 3 of the Kansas Constitution provides original jurisdiction in this court for proceedings in mandamus. However, relief in mandamus is discretionary. *State ex rel. Stephan v. Finney*, 251 Kan. 559, 567, 836 P.2d 1169 (1992). Mandamus is an appropriate proceeding for the purpose of compelling a public officer to perform a clearly defined duty, one imposed by law and not involving the exercise of discretion. 251 Kan. at 567. However, "[mandamus[ is not a common means of obtaining redress, but is available only in rare cases, and as a last resort, for causes which are really extraordinary." *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1024, 686 P.2d 171 (1984). This court will entertain a mandamus action if the issue is a matter of great public interest and concern. See *Sedlak v. Dick*, 256 Kan. 779, 786, 887 P.2d 1119 (1995).

K.S.A. 1997 Supp. 22-3428(1)(a) provides:

"When a defendant is acquitted and the jury answers in the affirmative to the special question asked pursuant to K.S.A. 22-3221, the defendant *shall be committed* to the state security hospital for safekeeping and treatment. A finding of not guilty and the jury answering in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, *shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others.*" (Emphasis added.)

The above-emphasized phrases crystalize the issue in this case and call for an answer to the question of whether, under the facts of this case, we ought to grant a writ of mandamus ordering Judge Becker to commit the defendant to the Larned State Security Hospital under 22-3428(1)(a).

The State argues that we must grant the writ because 22-3428(1)(a) establishes a clear duty to commit once a criminal defendant has been acquitted on the basis of a mental defect or disease under K.S.A. 22-3221. Under these circumstances, 22-3428(1)(a) provides that a defendant *shall* be committed to the state security hospital for safekeeping and treatment. The defendant argues that the same statute in its second sentence provides that an acquittal under the conditions set forth is *prima facie evidence* that he is likely to cause harm to self or others. Thus, he argues that 22-3428(1)(a) provides him an opportunity to rebut the prima facie evidence and if based upon such evidence the court determines that he is no longer likely to harm himself or others, the court may release him.

The interpretation of a statute is a question of law, and this court's review is unlimited. See *State v. Robinson*, 261 Kan. 865, 874, 934 P.2d 38 (1997). Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute. *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996). In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony, if possible. *State v. Le*, 260 Kan. 845, 847-48, 926 P.2d 638 (1996).

The language used in 22-3428(1)(a) is mandatory, and its import seems clear. A defendant who is acquitted under the conditions set

forth "shall" be committed for safekeeping and treatment. However, the second sentence added to the statute in 1980 raises the question whether use of the term "prima facie evidence" contemplates a hearing to determine if the defendant is presently likely to cause harm to self or others. A hearing was held in this case, and based upon such evidence, the trial court determined that the defendant was no longer likely to cause harm to himself or others.

The defendant argues that the evidence of Dr. Hohly and Brown Soden rebutted the prima facie evidence that arose because of his acquittal and that the trial court properly released him. He contends that continued confinement under this circumstance would violate his due process rights under *Foucha v. Louisiana*, 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992). In *Foucha*, the United States Supreme Court determined that an insanity acquittee may be held only as long as he or she is both mentally ill and dangerous, but no longer. 504 U.S. at 77.

We have had a prior opportunity to consider the argument of whether the mandatory commitment of insanity acquittees, pursuant to K.S.A. 1979 Supp. 22-3428, denied a defendant equal protection of law or due process or constituted cruel and unusual punishment. In *In re Jones*, 228 Kan. 90, 110, 612 P.2d 1211 (1980), we held that such mandatory commitment did not violate the constitutional rights of a defendant. *In re Jones* was decided based upon the provisions of 22-3428 prior to its amendment in 1980, and 12 years before the *Foucha* decision.

Prior to the 1980 amendment to 22-3428, commitment upon acquittal was mandatory. 228 Kan. at 109-10. Moreover, the commitment was of indefinite duration, although the defendant had the right to request a hearing annually, at which time he or she had the right to attempt to show by a preponderance of the evidence that he or she was not a danger to self or others and, thus, win a discharge. See K.S.A. 1979 Supp. 22-3428a. The defendant could also be discharged after a hearing if the chief medical officer felt that such a discharge was warranted and the defendant could prove to the court that he or she was not a danger to self or others. See K.S.A. 1979 Supp. 22-3428(2); 22-3428a(3).

At the time *In re Jones* was decided by this court, the 1980 amendment to 22-3428(1) had taken effect, although *Jones* was decided on the 1979 version of 22-3428(1). The uncertainty interjected into 22-3428 by the 1980 amendment was noted by Justice Holmes in his dissenting opinion:

"It is interesting to note, however, that the amendment provides in part: 'A finding of not guilty because of insanity shall be *prima facie evidence* that the acquitted person is presently dangerous to the person's self or others or property of others.' (Emphasis added.) Query: As 'prima facie evidence' merely creates a presumption which may be overcome by evidence from the other party (in this statute, the insanity acquittee), does not the new amendment imply or contemplate a prior hearing to allow the *'prima facie evidence'* to be rebutted or contradicted? Black's Law Dictionary 1353-1354 (4th ed. rev. 1968). This is a determination which will probably be before this court at some later date." 228 Kan. at 114.

The defendant argues in this case that the 1980 amendment was added to the statute in order to provide for a due process hearing before commitment, at which time a defendant could rebut the prima facie case established by the conviction. The defendant is correct in his contention that "prima facie evidence" is defined as evidence which, if uncontroverted, is sufficient to sustain a judgment. See *State v Haremza*, 213 Kan. 201, 206, 515 P.2d 1217 (1973).

The defendant also argues that the legislative history of the 1980 amendment supports his position. His argument has merit. A memorandum by Art Griggs of the Revisor of Statutes office to the Special Committee on Judiciary, which recommended the changes to the bill (22-3428), noted the recent trend in federal and state courts of requiring a due process hearing prior to commitment. See Memorandum to 1979 Special Committee on Judiciary regarding Proposal No. 28, p. 4. Following the presentation of Griggs' memorandum, (now Justice) Senator Donald Allegrucci moved that a bill draft be created which would statutorily recognize the plea of insanity and that such a finding of insanity would create a rebuttable presumption that the person is presently dangerous. See Minutes of Special Committee on Judiciary, September 20, 1979. This draft provided the present language in the statute that "[a] finding of not guilty and the jury answering in the affirmative to

the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others." This language arguably created a right to a precommitment hearing at which time the defendant could attempt to show that he or she was not presently likely to cause harm to self or others.

In 1993, the legislature modified the entire procedure under 22-3428. S.B. 10 sought to correct what was perceived as a constitutional deficiency by allowing for a hearing to be held after the verdict to determine the defendant's present mental state. See Minutes of the Senate Committee on Judiciary, January 26, 1993. According to the legislative history, there was grave concern that the system then in effect, with its automatic commitment and presumption of mental illness, was unconstitutional in light of the United States Supreme Court's decision in *Foucha v. Louisiana*, 504 U.S. 71. See Testimony of Brenda West Hagerman, Legal Services, Larned State Hospital, before the Senate Judiciary Committee, January 26, 1993.

As a result, in 1993, the procedure was changed to the present one, which provides that while a defendant, upon being acquitted by reason of a mental disease or defect, must be mandatorily committed to the state security hospital, such commitment is only for such a time as to allow the state security hospital to evaluate the defendant's current mental state. Such an evaluation must be made and a report issued to the court within 90 days of the defendant's admission. Thereafter, a hearing must be held within 30 days of the receipt of the report, at which time the defendant may present evidence that he or she is not currently mentally ill. If the court finds that the defendant is not currently mentally ill, he or she must be released. If the court finds that the defendant is still mentally ill, he or she may be committed or conditionally released. See K.S.A. 1997 Supp. 22-3428(1)(b), (c), (d). Thus, 22-3428 provides for a precommitment hearing following a limited commitment for evaluation purposes.

The purpose of the 1993 amendment to 22-3428 was to provide a uniform procedure to deal with a defendant who has been acquitted by reason of insanity, including the defendant's right to due

process within such procedure. Yet, the 1980 amendment language that "[a] finding of not guilty and the jury answering in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, *shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others*" remains.

Arguably, the language of the 1980 amendment which remains today provides a defendant a remedy in addition to the specific procedure set forth in the 1993 amendment to 22-3428. If the legislature intended, by the 1993 amendment, to provide a procedure whereby the defendant is mandatorily committed for evaluation purposes without a hearing, it is puzzling that it left the language intact in the 1980 amendment.

However, it is not necessary that we resolve this issue in order to decide the instant case, for it is clear that the trial court recognized that 22-3428(1)(a) required a defendant to be committed. The trial court then noted that this was a unique case, in that the purpose to be served by the mandatory commitment, that of allowing the state security hospital to evaluate and the chief medical officer to render an opinion on the defendant's present mental health, had already been completed. The court, therefore, saw little benefit in forcing the hospital and the defendant to jump through these hoops again and, instead, converted the sentencing proceeding to a hearing on the defendant's mental state under 22-3428(1)(b), (d). There was no objection by the State to the hearing. Substantial evidence, including the opinion of the chief medical officer at Larned State Hospital, demonstrated that the defendant was not a danger to himself or others. Based on this evidence, the court placed the defendant on conditional release as authorized by 22-3428(1)(d) and 22-3428(4).

Our reading of the record supports the trial court's characterization of the facts in this case as unique. Immediately following the incident giving rise to the charge of aggravated battery, the defendant was taken to Larned State Hospital by the police. He was involuntarily committed for his safety and for the safety of others. His medication was changed to fit his condition. After his evaluation and treatment at Larned, the chief medical officer de-

termined that the defendant was no longer a danger to himself or others and discharged him. Within a short time, he was tried and acquitted of aggravated battery based upon his plea of insanity. Based upon the uncontroverted evidence before the trial court that the defendant was no longer a danger to himself or others, the court placed him on conditional probation as authorized by 21-3428(1)(d) and 21-3428(4).

Under these unique facts, there is a serious question whether continued confinement in the Larned State Security Hospital would have violated the defendant's due process rights as outlined by the United States Supreme Court in *Foucha.* However, we need not resolve this question because we believe mandamus is unwarranted.

As we stated at the beginning of our discussion, relief in mandamus is discretionary. *State ex rel. Stephan v. Finney,* 251 Kan. at 567. "[Mandamus[ is not a common means of obtaining redress, but is available only in rare cases, and as a last resort, for causes which are really extraordinary." *State ex rel. Stephan v. O'Keefe,* 235 Kan. at 1024. The unique facts before us militate against a writ of mandamus.

Writ denied.

MCFARLAND, C.J., dissenting.

LOCKETT, J., dissenting: I respectfully dissent from the majority's determination that David Proctor is not subject to the mandatory commitment provision of K.S.A. 1997 Supp. 22-3428.

On August 8, 1996, Proctor checked himself into the Hutchinson Hospital psychiatric unit. The next day, he severely beat an orderly with a metal bar. On August 10, 1996, Proctor was civilly committed by the district court to Larned State Hospital under K.S.A. 1997 Supp. 59-2945 *et seq.*, the Care and Treatment Act for Mentally Ill Persons as a "psychiatric emergency." If Proctor had been charged with a crime at this point, he would have been sent to Larned State Security Hospital, which is situated on the same grounds as Larned State Hospital, for evaluation. K.S.A. 22-3303. After Proctor was medicated and then civilly evaluated at Larned

State Hospital, he was returned to the district court. Larned State Hospital had no further contact with Proctor.

On August 26, 1996, based on the evaluation by Larned State Hospital, the district court determined that Proctor "[was] mentally ill and [lacked] capacity to make decisions regarding treatment and placement." The judge ordered Proctor to commence outpatient care at a private mental health center, Horizons Mental Health Center, in Hutchinson, Kansas. Under the civil order, Proctor was treated by Dr. Eve Hohly, a private psychiatrist, and Janice Beougher, who has a Master's degree in clinical psychology.

On September 19, 1996, a complaint was issued charging Proctor with aggravated battery. Proctor was arrested. Proctor waived his right to a preliminary examination and his right to a jury trial, and filed notice of the insanity defense. On January 22, 1997, Proctor went to trial. The only evidence as to Proctor's insanity both at the time of the offense and at the time of his conditional release by Judge Becker was the testimony of Dr. Eve Hohly, who saw Proctor about once a month, and Janice Beougher.

Proctor was found not guilty by reason of insanity. In its petition for writ of mandamus, the State asserts that Judge Becker had no authority to conditionally release Proctor because K.S.A. 1997 Supp. 22-3428(1)(a) mandates that a criminal defendant who has been acquitted on the basis of a mental defect or disease under K.S.A. 22-3221 be committed to the state security hospital for safekeeping and treatment. The State requested that the judge order the defendant committed to the state security hospital for safekeeping and treatment as mandated by 22-3428(1).

When interpreting 22-3428(1), the fundamental rule is that the intent of the legislature, where it can be ascertained, governs the construction of a statute. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. Stated another way, when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. The court will not read into a statute that which the legislature has plainly excluded. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 141-42, 928 P.2d 57 (1996).

K.S.A. 1997 Supp. 22-3428(1) provides:

"(a) When a defendant is acquitted and the jury answers in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, the defendant *shall be committed* to the state security hospital for safekeeping and treatment. A finding of not guilty and the jury answering in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto *shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others.*

"(b)   Within 90 days of the defendant's admission, the chief medical officer of the state security hospital shall send to the court a written evaluation report. Upon receipt of the report, the court shall set a hearing to determine whether or not the defendant is currently a mentally ill person. The hearing shall be held within 30 days after the receipt by the court of the chief medical officer's report.

"(c)   The court shall give notice of the hearing to the chief medical officer of the state security hospital, the district or county attorney, the defendant and the defendant's attorney. The court shall inform the defendant that such defendant is entitled to counsel and that counsel will be appointed to represent the defendant if the defendant is not financially able to employ an attorney as provided in K.S.A. 22-4503 et seq. and amendments thereto. *The defendant shall remain at the state security hospital pending the hearing.*

"(d)   At the hearing, the defendant shall have the right to present evidence and cross-examine witnesses. At the conclusion of the hearing, if the court finds by clear and convincing evidence that the defendant is not currently a mentally ill person, the court shall dismiss the criminal proceeding and discharge the defendant, otherwise the court may commit the defendant to the state security hospital for treatment or may place the defendant on conditional release pursuant to subsection (4)." (Emphasis added.)

In an effort to explain why David Proctor is not subject to mandatory commitment under these circumstances, even though commitment is statutorily required, the majority cites *Foucha v. Louisiana*, 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992), and *In re Jones*, 228 Kan. 90, 612 P.2d 1211 (1980). A review of these two cases reveals that the majority's reliance on them is misplaced.

In *Foucha*, 504 U.S. 71, the defendant was charged with aggravated burglary and illegal discharge of a firearm. Two physicians testified Foucha had been incapable of distinguishing right from wrong at the time of the bad acts. The trial court found Foucha not guilty by reason of insanity and committed him until such time as doctors recommended he be released.

Article 654 of the Louisiana Code of Criminal Procedure Annotated provided that a person acquitted by reason of insanity shall be committed. After a person was committed, the court was required to then promptly hold a hearing at which that person had the burden of showing he or she does not pose a danger to society. Under the Louisiana Code, no finding of mental illness was required. The State had no burden whatsoever. This is quite different from 22-3428, which places the burden on the State to show by clear and convincing evidence that a defendant is mentally ill.

Four years later, the superintendent of the facility where Foucha was held recommended that Foucha be discharged. Following the Louisiana procedure for release, the superintendent formed a three-member panel to determine Foucha's mental condition. Finding no evidence of mental illness since his admission, the panel recommended that Foucha be conditionally released.

Not satisfied, the trial court commissioned a second two-member panel comprised of two of the three members of the original panel. The doctors opined that Foucha probably had suffered a drug-induced psychosis when he was admitted. Although that condition had passed, according to the doctors, Foucha had an antisocial personality. This condition is not a mental disease and is untreatable. They reported that Foucha "is presently in remission from mental illness [but] [w]e cannot certify that he would not constitute a menace to himself or others if released." 504 U.S. at 74-75. The Louisiana district court, Court of Appeals, and Supreme Court found that Foucha had not carried his burden of showing he was not dangerous and that neither his due process nor equal protection rights were violated.

The United States Supreme Court granted *certiorari* and overturned the Louisiana state courts, holding:

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed. [Citations omitted.] Here, according to the testimony given at the hearing in the trial court, Foucha is not suffering from a mental disease or illness. If he is to be held, he should not be held as a mentally ill person. [Citations omitted.]" 504 U.S. at 79.

The Court went on to say that the Louisiana statute does not carefully limit the scheme of confinement. 504 U.S. at 81. Under the

statute at issue, Foucha was not entitled to an adversarial hearing at which the State must prove by clear and convincing evidence that he presented a danger to the community. In fact, the State had to prove nothing, because the statute required the detainee to prove he or she was not dangerous. Unlike the Louisiana statute, 22-3428(1)(d) requires the State to prove by clear and convincing evidence that a committed defendant is mentally ill. If the State fails to provide such proof, the defendant must be released.

The *Foucha* court noted that one exception to the civil commitment due process requirements is where a criminal defendant is acquitted by reason of insanity. The *Foucha* Court held:

"When a person charged with having committed a crime is found not guilty by reason of insanity, however, a State may commit that person without satisfying the *Addington* [*v. Texas*, 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979),] burden with respect to mental illness and dangerousness. [Citation omitted.] Such a verdict, we observed in *Jones* [*v. United States*, 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043 (1983)], 'establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness,' [citation omitted], an illness that the defendant adequately proved in this context by a preponderance of the evidence. From these two facts, it could be properly inferred that at the time of the verdict, the defendant was still mentally ill and dangerous and hence could be committed." 504 U.S. at 76.

The 22-3428 mandatory commitment procedure was approved by the *Foucha* Court, despite the majority's claims to the contrary.

In *In re Jones*, 228 Kan. 90, Jones was charged with five counts of embezzlement from a bank and felony theft. Trial of the criminal cases was had on all five counts (arising from two cases). Jones was found not guilty on each count by reason of insanity. After this finding, Jones asserted to the district judge that because he was no longer insane or dangerous, the 22-3428 mandatory commitment procedure did not apply to him. To support this claim, Jones proffered the testimony of Dr. Leonard H. Kapelovitz, Dr. Steve Shelton, and Vernon Nikkel, all of whom would testify that the defendant was not currently dangerous, not in need of safekeeping, and not in need of additional mental treatment. The State argued to the district judge that the provisions of 22-3428 were mandatory and that introduction of evidence was irrelevant to the issue of

commitment to the State security hospital following an acquittal on the grounds of insanity.

The district court found: (1) the defendant's proffer as to present sanity was not admissible because it is irrelevant when commitment is mandatory; (2) 22-3428 did not establish a rebuttable presumption as to present insanity, rather, it establishes a procedure for commitment; and (3) 22-3428 is constitutional in that it does not unreasonably deprive a defendant of liberty without due process of law or equal protection. The district judge denied Jones' motion for a hearing to determine the applicability of 22-3428.

Jones appealed, and the case was ultimately transferred to the Kansas Supreme Court.

Jones contended that his mandatory commitment to the state security hospital pursuant to statute violated his rights to due process of law and equal protection. The basis of his contention was that commitment resulted with no prior due process, unlike persons civilly committed.

The *Jones* court observed that if the insanity defense is successfully asserted, the subsequent proceedings are governed by K.S.A. 1979 Supp. 22-3428 and K.S.A. 1979 Supp. 22-3428a. The *Jones* court found: (1) the statute's mandatory commitment provision was reasonably and rationally related to the accomplishment of proper legislative purpose and was not arbitrary or capricious; (2) the legislative scheme constituted a reasonable balance between the public's right to be protected from a potentially dangerous class of individuals and the rights of the members of the class to be protected from improvident confinement; (3) the classification of insanity acquittees as a class separate and apart from persons subject to civil involuntary commitment procedures was not arbitrary or capricious and was related to proper legislative ends sought to be attained; and (4) the mandatory commitment of insanity acquittees did not deny due process or equal protection of the law. 228 Kan. at 109-10.

After reaching this conclusion, the *Jones* court noted the 1980 amendment to 22-3428 was to be effective upon publication in the statute book. Although *Jones* was resolved based upon the existing law, K.S.A. 1980 Supp. 22-3428(1) provided:

"When a person is acquitted on the ground that such person was insane at the time of the commission of the alleged crime the verdict shall be 'not guilty because of insanity,' and the person so acquitted shall be committed to the state security hospital for safekeeping and treatment. *A finding of not guilty by reason of insanity shall constitute a finding that the acquitted person committed an act constituting the offense charged or an act constituting a lesser included crime, except that the person did not possess the requisite criminal intent. A finding of not guilty because of insanity shall be prima facie evidence that the acquitted person is presently dangerous to the person's self or others or property of others.*" (Emphasis indicates amendment.)

The *Jones* court found that the 1980 amendment was demonstrative of legislative intent of mandatory commitment for an individual found not guilty by reason of insanity and the result reached in *Jones* was not inconsistent with the 1980 amendment. 228 Kan. at 110. The *Jones* court then pointed out that extensive psychiatric treatment received by the petitioner should provide valuable data for the state security hospital in its evaluation of the petitioner. 228 Kan. at 112.

The *Jones* court concluded that in an original habeas corpus proceeding wherein mandatory commitment of insanity acquittees, pursuant to K.S.A. 1979 Supp. 22-3428, is challenged on constitutional grounds, the mandatory commitment did not constitute (1) a denial of equal protection of the law; (2) a denial of due process; or (3) cruel and unusual punishment. 228 Kan. at 111-12.

Unlike the statute held unconstitutional in *Foucha*, 22-3428 is narrowly tailored. It provides that a criminal defendant found to have committed the act charged, but who is not legally responsible for doing so because the defendant was incapable of forming criminal intent, be committed to the state security hospital. It is the jury's acquittal of the defendant that provides *"prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others"* to commit the person found mentally ill to the state security hospital. The defendant is entitled to a hearing within 120 days of the guilty verdict to determine his or her present sanity. The legislature passed this narrowly tailored statute to protect its citizens from someone who has committed criminal acts and has done so because he or she was insane.

The majority's vague references to *Foucha* and *Jones* to support the result here are troubling. Neither case calls into question the constitutionality of 22-3428. In fact, *Jones* expressly approved the mandatory commitment procedure contained in K.S.A. 1979 Supp. 22-3428 and 22-3428a and the 1980 amendment to K.S.A. 1979 Supp. 22-3428(a). In analyzing the 1980 amendment, the majority disregards the finding in *Jones* and now asserts that the legislature seems to require a precommitment hearing although it does not make this necessary determination to justify the result. The majority instead decided not to overrule *Jones*, but rather relied upon the "unique facts" of this case.

There is nothing vague about the statute. It mandates commitment to the state security hospital upon acquittal by reason of insanity. The majority reaches a decision that is wholly unsupported by precedent or law. It is not within the province of this court to ignore an unambiguous statute and precedent to reach the "right result."