No. 90,132

STATE OF KANSAS, *Appellee*, v. GERMAINE R. VAN HOET,
*Appellant.*
(89 P.3d 606)

816

Opinion filed May 14, 2004.

*James T. Barker*, of Kansas City, Missouri, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Patrick A.N. Carney*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The question we must answer is whether K.S.A. 2003 Supp. 22-3428 requires a trial court to commit a defendant who has been acquitted of a criminal charge by reason of a mental disease or defect to the state security hospital for an evaluation for up to 90 days, or whether such a defendant is entitled to an immediate hearing to determine whether he or she is a harm to himself, herself, or others. Our answer is that the Kansas Legislature mandates that the defendant be sent to the state security hospital under the provisions of K.S.A. 2003 Supp. 22-3428(1)(a). We therefore affirm the trial court.

*Background*

Germaine R. Van Hoet was charged with one count of domestic battery and one count of assault arising out of an incident that occurred on August 31, 2001. The defendant was appointed counsel and pled not guilty to both counts in the amended complaint.

The defendant filed a notice of intent to rely upon the defense of insanity, a request for a psychiatric evaluation, and a motion to determine competency to stand trial. On October 23, 2001, the district court found reason to believe the defendant was incompetent to stand trial and referred her to the Johnson County Mental Health Center for evaluation. Upon its recommendation for fur-

ther evaluation, the district court committed the defendant to the Osawatomie State Hospital (OSH) for a competency evaluation pursuant to K.S.A. 22-3302.

While at OSH, the defendant was diagnosed as suffering from schizoaffective disorder, bipolar type; personality disorder, not otherwise specified with narcissistic and antisocial features; and hypothryroidism and hypercholesterolemia. OSH staff psychiatrist Pia A. Sharp concluded that although the defendant suffered from schizoaffective disorder, bipolar type, her capacity to understand the proceedings against her and to assist in her defense were not substantially impaired.

On January 4, 2002, the defendant appeared before the trial court, was found competent to stand trial, and was released on bond. On February 22, 2002, the defendant filed a request for the appointment of a licensed psychologist to conduct an examination to determine whether she was sane at the time the offenses were committed.

On March 4, 2002, the defendant was evaluated by licensed psychologist James Ryabik. In his report dated April 3, 2002, Dr. Ryabik indicated that the defendant had deteriorated to a psychotic state when she did not take her medication. He opined that the defendant's failure to take her medication on the date of the incident exacerbated her schizoaffective disorder. Thus, the report indicated that the defendant was not likely to have willfully caused bodily harm to another or willfully and purposely placed one in apprehension of bodily harm. Dr. Ryabik also noted that the defendant should be in psychotherapy and monitored by a responsible professional as she was capable of being out of touch with reality if not on an efficient treatment regimen. Moreover, Dr. Ryabik concluded that the defendant needed help with "self-concept, self-image, and her paranoid ideation."

The defendant waived her right to a jury trial, and the State stipulated that the defendant was insane at the time of the offense. Upon her October 4, 2002, arraignment, the defendant admitted the actions supporting the charges but denied by reason of her mental condition the ability to form the requisite intent to support the charges. The trial court found the defendant not guilty by rea-

son of mental disease or defect. The parties were given the opportunity to file briefs, and the matter of appropriate disposition was set for November 21, 2002.

Upon hearing, the defendant argued she was entitled to a precommitment hearing under K.S.A. 2003 Supp. 22-3428(1)(a) to determine whether she was a mentally ill person as defined by K.S.A. 2003 Supp. 22-3428(7)(b). On her behalf, counsel argued that if a full hearing was granted, the court would have a difficult time finding the defendant mentally ill because she had sought out treatment for her mental illness after being released on bond in January 2002, because she had attended regular counseling sessions at Wyandot Mental Health Center, and because she had taken her prescribed medications. However, no proffer of any such evidence was made to the trial court on November 21, 2002, or at any time before the trial court entered its order on December 10, 2002, committing the defendant to the Larned State Security Hospital (Larned) under the provisions of K.S.A. 2003 Supp. 22-3428.

After consideration of this court's decisions in *In re Jones*, 228 Kan. 90, 612 P.2d 1211 (1980), and *State v. Becker*, 264 Kan. 804, 958 P.2d 627 (1998), the trial court ordered the defendant committed under the provisions of K.S.A. 2003 Supp. 22-3428, reasoning as follows:

"The *Becker* case did not send—in that case the facts were the defendant was not sent to Larned State Hospital. And they said that she did not have to go to Larned State Hospital because the person has been fully evaluated by state psychiatrists from Larned. But it's a narrow exception. *Becker* supports the clear language of the statute and supports, as well, *State v. Jones*. Even though the standard for the not guilty is changed, the *Jones* ruling and holding is good law.

"Here's what *Becker* says, 'As a result, in 1993, the procedure was changed to the present one, which provides that while a defendant, upon being acquitted by reason of mental disease or defect, must be mandatorily committed to the state security hospital, such commitment is only for such a time as to allow the state security hospital to evaluate the defendant's current mental state. Such an evaluation must be made and a report issued to the court within ninety days'—and we've been through that. 'If the court finds that the defendant is not currently mentally ill, he or she must be released. If the court finds that the defendant is still mentally ill, he or she may be committed or conditionally released.'

"And those are the same conditions, Mr. Barker, that you talked about. . . .

"Frankly, after having heard all the arguments and after reading the cases and after having the matter researched and reading the language of the statute, I'm satisfied that it's mandatory upon finding of not guilty by mental defect, which we have in this case, I must commit the defendant to the state security hospital for an evaluation with a report to be brought back to the court within ninety days and a hearing within thirty days thereafter."

On December 24, 2002, the trial court filed a journal entry finding the defendant not guilty by lack of mental state pursuant to K.S.A. 2003 Supp. 22-3428. See K.S.A. 22-3220. The court ordered the defendant committed to the state security hospital for safekeeping and treatment pursuant to K.S.A. 2003 Supp. 22-3428(1). The court ordered the chief medical officer to submit a written evaluation within 90 days of the defendant's admission, and the court stated it would then set a hearing to determine whether the defendant was currently mentally ill within 30 days of receipt of the report. The defendant's appeal of this order was transferred to this court pursuant to K.S.A. 20-3018(c).

*Legislative History and Case Law Relating to K.S.A. 2003 Supp. 22-3428*

On appeal, the defendant argues that K.S.A. 2003 Supp. 22-3428(1)(a) grants her a right to an immediate hearing after her acquittal by reason of mental disease or defect on the issue of whether she is a harm to herself or others. According to her argument, if the provisions of K.S.A. 2003 Supp. 22-3428(a) are interpreted otherwise, the statute is unconstitutional on its face in that it denies her and all persons similarly situated due process of law and equal protection. The defendant also contends that if K.S.A. 2003 Supp. 22-3428(1)(a) is interpreted to deny her an immediate hearing, its provisions are unconstitutional as applied to her.

While the defendant limits her arguments to the first subsection of 22-3428 *viz.,* subsection (1)(a), we believe it is necessary to consider the entire statute, including all subsections. A familiar maxim of statutory interpretation provides: "In construing statutes and determining legislative intent, several provisions of an act, *in pari materia,* must be construed together with a view of reconciling and

bringing them into workable harmony if possible. [Citation omitted.]" *State v. Brown,* 272 Kan. 843, 847, 35 P.3d 910 (2001). However, before examining the entire statute, it is helpful to consider earlier provisions of K.S.A. 22-3428(1), its evolution over time, and supporting Kansas case law interpreting the statute as discussed by this court in *Becker.*

K.S.A. 1979 Supp. 22-3428(1) provided in relevant part:

"(1) When a person is acquitted on the ground that such person was insane at the time of the commission of the alleged crime the verdict shall be 'not guilty because of insanity,' and the person so acquitted shall be committed to the state security hospital for safekeeping and treatment."

As indicated in *Becker,* this 1979 version of the statute may have raised due process concerns. See 264 Kan. at 810-13. K.S.A. 1979 Supp. 22-3428 mandated commitment of a defendant acquitted by reason of insanity for a period of indefinite duration. Such an acquitted defendant had the right to request a hearing annually, at which time he or she had the right to attempt to show by a preponderance of the evidence that he or she was not a danger to himself, herself, or others. Thus, a defendant committed under this provision could be held in the state security hospital for a full year without a hearing. See K.S.A. 1979 Supp. 22-3428a. However, the statute did provide for another means of discharge in a case where the chief medical officer of the state security hospital felt that such a discharge was warranted and the defendant could prove to the court that he or she was not a danger to himself, herself, or others. See K.S.A. 1979 Supp. 22-3428(2); K.S.A. 1979 Supp. 22-3428a(3).

In 1980, the Kansas Legislature acknowledged its concern with the indefinite commitment provisions of K.S.A. 1979 Supp. 22-3428(1) by amending the statute to include the following language:

"A finding of not guilty because of insanity shall be prima facie evidence that the acquitted person is presently dangerous to the person's self or others or property of others." L. 1980, ch. 105, sec. 1.

Viewing this amendment in conjunction with its legislative history, we recognized in *Becker* that the amendment arguably created a right to a precommitment hearing at which time the defendant could attempt to show that he or she was not presently likely to

cause harm to himself, herself, or others. See *Becker*, 264 Kan. at 810-12 (discussing legislative history of the 1980 amendment).

In *Jones*, decided before the effective date of the 1980 amendment, this court held that a mandatory commitment of indefinite duration under K.S.A. 1979 Supp. 22-3428(1) did not deny the insanity acquittee due process of law or equal protection of the law. 228 Kan. at 109-10.

The *Jones* court noted that although it was deciding the case upon the existing law, the 1980 amendments to K.S.A. 22-3428 were "demonstrative of legislative intent and the result reached herein is not inconsistent therewith." 228 Kan. at 110. However, Justice Holmes in a dissent asked the following question concerning the 1980 amendment:

"As 'prima facie evidence' merely creates a presumption which may be overcome by evidence from the other party (in this statute, the insanity acquittee), does not the new amendment imply or contemplate a prior hearing to allow the *'prima facie evidence'* to be rebutted or contradicted?" 228 Kan. at 114.

It appears that the Kansas Legislature by its above 1980 amendment to K.S.A. 22-3428(1) did contemplate a due process hearing prior to commitment. See Memorandum to 1979 Special Committee on Judiciary regarding Proposal No. 28, p. 4 (recommending changes to the bill after noting the recent trend in federal and state courts of requiring a due process hearing prior to commitment). However, no Kansas case arose testing the 1980 amendment prior to the United States Supreme Court's 1992 decision in *Foucha v. Louisiana,* 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992), and the Kansas Legislature's subsequent adoption of a complete revision of K.S.A. 22-3428 in 1993. See L. 1993, ch. 247.

In *Foucha,* the Court found that a Louisiana statute which allowed an insanity acquittee to be committed to a mental institution indefinitely until he was able to demonstrate that he was not dangerous to himself and others even though he did not suffer from any mental illness, violated the Due Process Clause of the United States Constitution. 504 U.S. at 83. The problem with the Louisiana law was that it allowed an insanity acquittee to be detained even after the acquittee had regained his or her sanity. The Court

found that a State may commit an insanity acquittee without satisfying the civil commitment procedures, but the committed acquittee is entitled to release when he or she has regained sanity or is no longer dangerous. 504 U.S. at 76-77.

The Court reasoned that a verdict of not guilty by reason of insanity establishes two facts: " '(i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness.' " 504 U.S. at 76 (quoting *Jones v. United States*, 463 U.S. 354, 363, 77 L. Ed. 2d 694, 103 S. Ct. 3049 [1983]). From these two facts, it could be inferred that at the time of the verdict the defendant was still mentally ill and dangerous and could be committed. 504 U.S. at 76. In a concurring opinion, Justice O'Connor further noted:

"It might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if, unlike the situation in this case, [where Louisiana determined that the inference of dangerousness drawn from a verdict of not guilty by reason of insanity continues even after a clinical finding of sanity] the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness. [Citations omitted.]

. . . .

"Today's holding follows directly from our precedents and leaves the States appropriate latitude to care for insanity acquittees in a way consistent with public welfare." 504 U.S. at 87-90.

In response to *Foucha,* the Kansas Legislature modified the entire procedure under K.S.A. 22-3428 in its 1993 amendment. In 1995, the Kansas Legislature amended the statute to abolish the defense of insanity and replace it with a mental disease or defect defense. The statute now provides:

"(1)(a) When a defendant is acquitted and the jury answers in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, the defendant shall be committed to the state security hospital for safekeeping and treatment. A finding of not guilty and the jury answering in the affirmative to the special question asked pursuant to K.S.A. 22-3221 and amendments thereto, shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others.

"(b) Within 90 days of the defendant's admission, the chief medical officer of the state security hospital shall send to the court a written evaluation report. Upon receipt of the report, the court shall set a hearing to determine whether or not

the defendant is currently a mentally ill person. The hearing shall be held within 30 days after the receipt by the court of the chief medical officer's report.

"(c) The court shall give notice of the hearing to the chief medical officer of the state security hospital, the district or county attorney, the defendant and the defendant's attorney. The court shall inform the defendant that such defendant is entitled to counsel and that counsel will be appointed to represent the defendant if the defendant is not financially able to employ an attorney as provided in K.S.A. 22-4503 *et seq.* and amendments thereto. The defendant shall remain at the state security hospital pending the hearing.

"(d) At the hearing, the defendant shall have the right to present evidence and cross-examine witnesses. At the conclusion of the hearing, if the court finds by clear and convincing evidence that the defendant is not currently a mentally ill person, the court shall dismiss the criminal proceeding and discharge the defendant, otherwise the court may commit the defendant to the state security hospital for treatment or may place the defendant on conditional release pursuant to subsection (4)." K.S.A. 2003 Supp. 22-3428.

"In any case in which the defense has offered substantial evidence of a mental disease or defect excluding the mental state required as an element of the offense charged, and the jury returns a verdict of 'not guilty,' the jury shall also answer a special question in the following form: 'Do you find the defendant not guilty solely because the defendant, at the time of the alleged crime, was suffering from a mental disease or defect which rendered the defendant incapable of possessing the required criminal intent?' The provisions of this section shall be in force and take effect on and after January 1, 1996." K.S.A. 22-3221.

In *Becker*, this court discussed the reasoning behind the 1993 comprehensive procedural amendment:

"In 1993, the legislature modified the entire procedure under 22-3428. S.B. 10 sought to correct what was perceived as a constitutional deficiency by allowing for a hearing to be held after the verdict to determine the defendant's present mental state. See Minutes of the Senate Committee on Judiciary, January 26, 1993. According to the legislative history, there was grave concern that the system then in effect, with its automatic commitment and presumption of mental illness, was unconstitutional in light of the United States Supreme Court's decision in *Foucha v. Louisiana*, 504 U.S. 71. See Testimony of Brenda West Hagerman, Legal Services, Larned State Hospital, before the Senate Judiciary Committee, January 26, 1993.

"As a result, in 1993, the procedure was changed to the present one, which provides that while a defendant, upon being acquitted by reason of a mental disease or defect, must be mandatorily committed to the state security hospital, such commitment is only for such a time as to allow the state security hospital to evaluate the defendant's current mental state. Such an evaluation must be made and a report issued to the court within 90 days of the defendant's admission.

Thereafter, a hearing must be held within 30 days of the receipt of the report, at which time the defendant may present evidence that he or she is not currently mentally ill. If the court finds that the defendant is not currently mentally ill, he or she must be released. If the court finds that the defendant is still mentally ill, he or she may be committed or conditionally released. See K.S.A. 1997 Supp. 22-3428(1)(b), (c), (d). Thus, 22-3428 provides for a precommitment hearing following a limited commitment for evaluation purposes." 264 Kan. at 811.

In *Becker,* we were faced with many of the arguments raised by the defendant in this case regarding K.S.A. 1997 Supp. 22-3428. Becker was taken to Larned by police immediately after the incident giving rise to an aggravated battery charge. He was involuntarily committed to Larned, evaluated, and treated, which included a change in his medication to fit his condition. Prior to his commitment, Becker's mental condition was aggravated by his taking prescribed medication inconsistent with his mental condition. At the end of his extended commitment he was discharged based upon the chief medical officer's determination that he was no longer a danger to himself or others. Within a short time, Becker was tried and acquitted of the charged aggravated battery based upon his plea of insanity. The district court converted the sentencing proceeding to a hearing on the defendant's mental state under 22-3428(1)(b) and (d), and he was placed on conditional release.

On appeal, the State sought a declaration from this court that 22-3428(1)(a) mandates that a criminal defendant who has been acquitted on the basis of a mental defect or disease under K.S.A. 22-3221 be committed to the state security hospital for safekeeping and treatment. This court reviewed the legislative history of the statute and the relevant case law and concluded that the purpose of the 1993 amendment was "to provide a uniform procedure to deal with a defendant who has been acquitted by reason of insanity, [now mental disease or defect] including the defendant's right to due process within such procedure." 264 Kan. at 811-12. Of relevance to this case, the court went on to note:

"Arguably, the language of the 1980 amendment which remains today provides a defendant a remedy in addition to the specific procedure set forth in the 1993 amendment to 22-3428. If the legislature intended, by the 1993 amendment, to provide a procedure whereby the defendant is mandatorily committed for eval-

uation purposes without a hearing, it is puzzling that it left the language intact in the 1980 amendment." 264 Kan. at 812.

However, the court concluded that it was not necessary to resolve this issue because it was clear that the district court recognized that 22-3428(1)(a) required a defendant to be committed, but this was a unique case in that the purpose to be served by the mandatory commitment, *i.e.*, allowing the state security hospital to evaluate and the chief medical officer to render an opinion on the defendant's present mental state, had already been completed. Recognizing that relief in mandamus is discretionary, *Becker* denied the State's application for a writ of mandamus under the unique facts of that case. 264 Kan. at 812-13.

*Statutory Interpretation*

The interpretation of a statute is a question of law, and the appellate court's review is unlimited. *State v. Engles*, 270 Kan. 530, 532-33, 17 P.3d 355 (2001).

"The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. [Citation omitted.] Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.] The legislative intent is to be determined from a general consideration of the entire act, and effect must be given, if possible, to the entire act and every part thereof, and it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]" *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

When the legislature revises an existing law, it is presumed that the legislature intended to change the law from how it existed prior to the amendment, and it is presumed that the legislature does not intend to enact useless or meaningless legislation. See *Davey v. Hedden*, 260 Kan. 413, 419-20, 920 P.2d 420 (1996); *Galindo v. City of Coffeyville*, 256 Kan. 455, 464-65, 885 P.2d 1246 (1994). The court should avoid interpreting a statute in such a way that

part of it becomes surplusage. See *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990).

The defendant argues that the district court ignored these rules of statutory construction by not construing K.S.A. 2003 Supp. 22-3428(1)(a) to require an immediate hearing to determine whether the acquitted defendant is presently "likely to cause harm to self or others." Specifically, the defendant contends that the district court ignored the second sentence of K.S.A. 2003 Supp. 22-3428(1)(a), which provides that an acquittal by reason of mental disease or defect "shall be prima facie evidence that the acquittee is presently likely to cause harm to self or others." The defendant further argues that Justice Holmes' dissent in *In re Jones*, 228 Kan. 90, 114, 612 P.2d 1211 (1980), supports her interpretation by suggesting that such language contemplates a prior hearing to allow the defendant to rebut the prima facie evidence. Finally, the defendant argues that reliance on *Jones* is misplaced because it was decided under the prior version of 22-3428 when Kansas recognized an insanity, rather than a mental disease or defect, defense.

The defendant's argument is narrowly based upon K.S.A. 2003 Supp. 22-3428(1)(a) without consideration of the statute as a whole. While a persuasive argument may have been made in 1980 that the language stating that an acquittal by reason of insanity shall be prima facie evidence that the acquitted defendant is presently likely to cause harm to himself, herself, or others suggests an immediate hearing after conviction so the defendant might rebut the prima facie evidence, the same argument lacks merit in light of the complete revision of the law in 1993 and subsequent amendments in 1995 and 1996.

As previously noted when construing a statute, the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. In this case, the intent of the legislature regarding K.S.A. 2003 Supp. 22-3428 as a whole seems clear. The legislature decided to set up a uniform process whereby a defendant acquitted by reason of a mental disease or defect would be committed for evaluation for a short time of limited duration followed by a court hearing on the defendant's present mental state. To accomplish this purpose, K.S.A. 2003

Supp. 22-3428(1)(a) provides that one found not guilty by reason of mental disease or defect shall be committed to the state security hospital for safekeeping and treatment. Within 90 days of admission, the chief medical officer of the state security hospital shall send to the court a written evaluation report. Upon receipt of the report, the court shall set a hearing to determine whether the defendant is currently a mentally ill person. The hearing shall be held within 30 days after the court's receipt of the evaluation report. K.S.A. 2003 Supp. 22-3428(1)(b).

K.S.A. 2003 Supp. 22-3428(1)(c) requires the court to notify all interested parties, including the chief medical officer, and appoint an attorney if the defendant is not financially able to employ an attorney. K.S.A. 2003 Supp. 22-3428(1)(d) mandates that the hearing shall be consistent with due process by providing that the defendant shall have the right to present evidence and cross-examine witnesses. At the conclusion of the hearing, if the court finds by clear and convincing evidence that the defendant is not currently a mentally ill person, the court shall dismiss the criminal proceeding and discharge the defendant; otherwise the court may commit the defendant to the state security hospital for treatment or may place the defendant on conditional release. K.S.A. 2003 Supp. 22-3428(1)(d).

Although the legislature retained the language in K.S.A. 2003 Supp. 22-3428(1)(a) regarding prima facie evidence, such language when considered with the entire statute serves to justify the initial commitment of a defendant acquitted by reason of mental disease or defect to the state security hospital for evaluation before disposition. The second sentence of 22-3428(1)(a) thus serves to justify the mandatory language of the first sentence providing that such a "defendant shall be committed to the state security hospital for safekeeping and treatment." K.S.A. 2003 Supp. 22-3428(1)(a). Subsection (1)(a) contains no express provision for a hearing, but subsections (1)(b), (c), and (d) set forth a comprehensive procedure calling for a timely evaluation of the defendant, notice to all interested parties, appointment of counsel for the defendant if financially unable to employ one, and a full hearing consistent with due process requiring dismissal of all charges and discharge if the

defendant is "not currently a mentally ill person." K.S.A. 2003 Supp. 22-3428(1)(b), (c), and (d).

The question asked by Justice Holmes in his dissent in *Jones* as to whether the prima facie evidence language contemplates a hearing prior to commitment has been answered not by judicial interpretation of the statute in effect at that time but by the legislature's comprehensive revision of the uniform procedures relating to the due process determination of whether a "defendant is not currently a mentally ill person." K.S.A. 2003 Supp. 22-3428(1)(d). The trial court's determination that the provisions of K.S.A. 2003 Supp. 22-3428 required the commitment of the defendant to the state security hospital is consistent with the express provisions of the statute and consistent with the above interpretation of the statute as a whole. Thus, on this point we affirm the trial court.

*Constitutionality of K.S.A. 2003 Supp. 22-3428 on its Face*

The defendant argues that the mandatory commitment procedure under K.S.A. 2003 Supp. 22-3428(1)(a) violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Kansas Constitution on its face and as applied. The determination of whether a statute violates the Constitution is a question of law over which we have unlimited de novo review. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197, 62 P.3d 236 (2003).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. A statute must clearly violate the constitution before it may be struck down. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." *State v. Martinez*, 268 Kan. 21, 23, 988 P.2d 735 (1999).

The defendant acknowledges that this court upheld the constitutionality of K.S.A. 1979 Supp. 22-3428 in *Jones*, 228 Kan. at 90, but she contends this court should reject *Jones'* precedential value because it was decided when Kansas recognized the *M'Naghten* defense of insanity rather than the *mens rea* approach effective January 1, 1996. The defendant further contends that automatic commitment will violate her right to due process of law because it

will not require a determination of her present mental condition. "Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha v. Louisiana*, 504 U.S. 71, 79, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992).

As previously discussed, this court upheld the constitutionality of the mandatory commitment provision of K.S.A. 1979 Supp. 22-3428. At the time *Jones* was decided, Kansas still had in place the defense of insanity as represented by the *M'Naghten* rule, which provides in relevant part:

" '[T]he defendant is laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he is doing, or if he did know it, that he did not know that he was doing was wrong because of his mental inability to distinguish between right and wrong, and if these facts exist, then the law does not hold him responsible for his act.' " 228 Kan. at 98-99 (quoting *State v. Andrews*, 187 Kan. 458, 465, 357 P.2d 739 [1960], *cert. denied* 368 U.S. 868 [1961]).

The *Jones* court discussed the significance of the *M'Naghten* test:

"The *M'Naghten* test has often been criticized by those who believe it is too strict and unenlightened in view of advances in modern psychiatry. . . . The *M'Naghten* rule is the law of this state. If degrees of insanity were placed on a scale of one to ten in ascending order of severity, those failing the *M'Naghten* test are all 'tens.' To fail the *M'Naghten* test one must not have understood the nature of his acts or that such acts were wrong—the so-called right and wrong test. Generally speaking, evidence that a defendant attempted to conceal the crime or his identity as the perpetrator thereof goes a long way to defeat an insanity defense. Again, speaking in generalities, an insanity defense is more likely to be successful when the crime is senseless, heinous and shocking. In such situations a jury can more easily conclude that the defendant must not have understood the nature of his acts or that the same were wrong." 228 Kan. at 99-100.

In reviewing cases from other jurisdictions, the *Jones* court noted:

"One of the difficulties in comparing the decisions of courts of other jurisdictions is that each has its own statutory scheme and case law relative to the insanity defense. Even the test of insanity varies. Insanity acquittees in *M'Naghten* rule states have 'failed' a far more rigid test than have insanity acquittees in an A.L.I. rule state. These differences are important relative to reasonableness of the mandatory commitment provision, as well as to its comparison with involuntary commitment procedures in considering equal protection arguments." 228 Kan. at 107.

The defendant argues that when operating under the *M'Naghten* rule, a court could safely infer that the acquitted defendant's degree of mental illness, if placed on a scale of 1 to 10 in ascending order, would have been a 10, and no real chance existed that the mandatory commitment provision of 22-3428 could violate an acquitted defendant's constitutional rights. However, the defendant contends, since the adoption of the *mens rea* approach to mental defenses, the court can no longer safely draw such an inference, as the factfinder merely has to find that she had been suffering from a mental disease or defect that rendered her incapable of possessing the required mental state. See K.S.A. 22-3220. Thus, the defendant contends a distinct possibility exists that her due process rights will be violated.

However, this argument is without merit. Marc Rosen compared the *mens rea* approach with the former insanity defense in his article, *Insanity Denied: Abolition of the Insanity Defense in Kansas*, 8 Kan. J.L. & Pub. Pol'y 253-54 (1999), and concluded:

"Kansas's new '*mens rea*' approach is too narrow. Proclaimed as a balance between the rights of mentally ill defendants and the public's outcry for reform, the new *mens rea* approach is unfair when compared to the former insanity defense. This is evidenced by the fact that *some of the most debilitating mental illnesses would fail to meet the strict requirements of the new approach.*" (Emphasis added.)

In fact, the adoption of the *mens rea* approach arguably makes the nature of the commitment bear even more of a relation to the purpose for which a defendant is committed since the defendant is only able to introduce evidence of a mental disease or defect as it specifically relates to the requisite *mens rea* of the offense. Under the former insanity defense, the defense could introduce evidence as to the existence of a mental disease or defect to litigate a defendant's mental condition in general. See *State v. Jorrick*, 269 Kan. 72, 82, 4 P.3d 610 (2000) (quoting Rosen, 8 Kan. J.L. & Pub. Pol'y at 254-55).

The defendant cites *Foucha* in arguing that if K.S.A. 2003 Supp. 22-3428(1)(a) does not allow a specially acquitted defendant the right to a precommitment hearing, then, like the Louisiana statute in *Foucha*, it violates that defendant's right to due process because he or she can be committed to the state security hospital even if

he or she is not presently suffering from any mental illness or is not a danger to himself, herself, or others.

However, the defendant's argument overlooks the fact that the limited commitment is simply to conduct an evaluation in order to provide the defendant with a precommitment due process hearing. Although the amended version of K.S.A. 22-3428 provides for a mandatory commitment in subsection (1)(a), when the provisions of K.S.A. 2003 Supp. 22-3428 are read as a whole, it becomes apparent that the legislature, concerned about due process rights of the acquittee, provided in subsections (1)(b), (c), and (d) for a timely hearing on the issue of whether the defendant is currently a mentally ill person.

Within 90 days of a defendant's admission to the state security hospital, the chief medical officer shall send to the court a written evaluation report on this issue, and a hearing shall be held within 30 days after the receipt of that report. K.S.A. 2003 Supp. 22-3428(1)(b). Subsection (1)(c) provides that the court shall give notice of the hearing to interested parties, including the defendant and the defendant's attorney. If the defendant is financially unable to employ an attorney, one shall be appointed for the defendant by the court. Subsection (1)(d) provides for a full evidentiary hearing where the defendant shall have the right to present evidence and cross-examine witnesses. "[I]f the court finds by clear and convincing evidence that the defendant is not currently a mentally ill person, the court shall dismiss the criminal proceeding and discharge the defendant." K.S.A. 2003 Supp. 22-3428(1)(d).

The above subsections provide a limited and reasonable period of time after a defendant has been acquitted by reason of mental disease or defect for an evaluation of the defendant's present mental state. Without such an evaluation, the court would be forced to prematurely determine the potential danger such an acquittee poses to himself, herself, or others. See *State v. Phillips*, 968 S.W.2d 874 (Tenn. Crim. App. 1996), *cert. denied* 525 U.S. 847 (1998) (citing *People v. De Anda*, 114 Cal. App. 3d 480, 489, 170 Cal. Rptr. 830 [1980], *cert. denied* 451 U.S. 990 [1981]).

In *Phillips*, the Tennessee appellate court considered both *Jones v. United States*, 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043

(1983), and *Foucha*, 504 U.S. 71, in concluding that immediate mandatory hospitalization of the insanity acquittee for 60 days for the purpose of diagnosis and evaluation did not violate his equal protection and due process rights, reasoning in part:

"Automatic commitment of an insanity acquittee provides the state with an in-depth opportunity to assess the defendant's current mental status and to determine whether he poses a potential danger upon his release. We agree that the fact that the trial court found a reasonable doubt as to the defendant's sanity at the time of the offense provides sufficient reason for further examination. Moreover, the sixty-to-ninety-day period between the defendant's acquittal and the hearing to appraise his then existing mental condition is necessary to provide the medical experts with a reasonable opportunity to observe him. Without an evaluation, a trial court would be forced prematurely to evaluate the potential danger an insanity acquittee poses to himself or others.

. . . .

"The United States Supreme Court has recognized that in light of the 'uncertainty of diagnosis in [the mental health] field and the tentativeness of professional judgment,' the 'courts should pay particular deference to reasonable legislative judgments.' *Jones*, 463 U.S. at 364 n.13, 103 S. Ct. at 3050 n.13. The Tennessee legislature has provided mentally ill defendants with the right to an absolute insanity defense and, thus, has the prerogative to impose conditions on those who successfully rely upon such a defense. We do not think that the legislature acted unreasonably in allowing a definite period of sixty to ninety days for examination and diagnosis. . . .

. . . .

"Significantly, the defendant in the present case admitted that he committed the acts that would otherwise constitute criminal offenses, but that he did so while mentally ill. In this respect, the defendant placed himself in a different position than other criminal defendants or civil commitment defendants by choosing to claim that he was not mentally responsible for his acts. Moreover, we also conclude that the record on appeal does not support the trial court's 'findings' that the defendant was no longer a danger to society at the time of trial . . . .

"Thus, we cannot say, even as a matter of evidentiary fact, that the defendant was shown to be in no need of evaluation and treatment relative to his mental health. In other words, although he may avoid the ordinary criminal penalty by successfully relying on the defense of insanity, it is not unreasonable for the legislature to provide for a means by which the state can determine that he no longer suffers from the same mental abnormality that caused the 'criminal' acts. In this fashion, the commitment of an insanity acquittee bears a rational relationship to legitimate state purposes so as to comply with equal protection of the law." 968 S.W.2d at 880-82.

In this case, the legislative history clearly indicates that the legislature was aware of *Foucha* and sought to correct any constitutional deficiencies by enacting the 1993 amendments, which provide for a precommitment hearing after a limited commitment for evaluation purposes. As noted in *Phillips*, this procedure provides the State with an in-depth and uniform opportunity to assess a defendant's current mental status and to determine whether he or she poses a potential danger upon his or her release. It is not unreasonable for the legislature to provide a means by which the State can determine that the defendant no longer suffers from the same mental abnormality that prevented him or her from being found guilty of the criminal acts.

We believe that the Kansas Legislature, in its 1993 amendment of K.S.A. 22-3428, consistent with due process, struck a reasonable balance between the citizens' right to be secure and protected against the potential dangers posed by a defendant acquitted by reason of insanity (now, mental disease or defect) and that defendant's right to be free at such time as he or she is no longer a danger to himself, herself, or society. This conclusion is further supported by Justice Lockett's dissent in *State v. Becker*, 264 Kan. 804, 813, 958 P.2d 627 (1998):

"Unlike the statute held unconstitutional in *Foucha*, 22-3428 is narrowly tailored. It provides that a criminal defendant found to have committed the act charged, but who is not legally responsible for doing so because the defendant was incapable of forming criminal intent, be committed to the state security hospital. It is the jury's acquittal of the defendant that provides '*prima facie evidence that the acquitted defendant is presently likely to cause harm to self or others*' to commit the person found mentally ill to the state security hospital. The defendant is entitled to a hearing within 120 days of the guilty verdict to determine his or her present sanity. The legislature passed this narrowly tailored statute to protect its citizens from someone who has committed criminal acts and has done so because he or she was insane." 264 Kan. at 819.

The defendant also attempts to raise an equal protection argument by citing K.S.A. 22-3222 and K.S.A. 22-3429, which provide:

"In any case in which the defendant is found not guilty of a charged crime, and the special question under K.S.A. 22-3221 is answered in the affirmative and the defendant is also found guilty of a lesser included or otherwise charged offense, the court shall proceed in the manner authorized by K.S.A. 22-3429 *et seq.*, and

amendments thereto. The provisions of this section shall be in force and take effect on and after January 1, 1996." K.S.A. 22-3222.

"After conviction and prior to sentence and as part of the presentence investigation authorized by K.S.A. 21-4604 and amendments thereto or for crimes committed on or after July 1, 1993, a presentence investigation report as provided in K.S.A. 21-4714 and amendments thereto, the trial judge *may* order the defendant committed for mental examination, evaluation and report. If the defendant is convicted of a felony, the commitment shall be to the state security hospital or any suitable local mental health facility. If the defendant is convicted of a misdemeanor, the commitment shall be to a state hospital or any suitable local mental health facility. If adequate private facilities are available and if the defendant is willing to assume the expense thereof, commitment may be to a private hospital. A report of the examination and evaluation shall be furnished to the judge and shall be made available to the prosecuting attorney and counsel for the defendant. A defendant may not be detained for more than 120 days under a commitment made under this section." (Emphasis added.) K.S.A. 22-3429.

" 'Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.' " *Jones*, 228 Kan. at 97 (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111, 15 L. Ed. 2d 620, 86 S. Ct. 760 [1966]). In the absence of a suspect classification or an intrusion upon a fundamental constitutional right, the challenged classification must bear some rational relationship to legitimate state purposes. *Phillips*, 968 S.W.2d at 882.

The defendant argues that the difference in classification between a defendant specially acquitted under K.S.A. 22-3221 (mandatory commitment under K.S.A. 2003 Supp. 22-3428) and a defendant specially acquitted of one charge but convicted of another charge under K.S.A. 22-3222 (discretionary commitment with the court) could not be related to any legitimate State interest. However, these two classes of defendants are clearly different as the latter has been convicted of a crime and was able in some part to form the requisite intent despite his or her mental disease or defect. In the latter case, the legislature has made a determination that the presentence investigation performed as a result of the conviction adequately protects the public and that it was appropriate to grant the district court more discretion in determining whether

to commit the defendant for further evaluation. The defendant's equal protection argument fails.

*Constitutionality of K.S.A. 2003 Supp. 22-3428 as Applied*

The defendant finally argues that the mandatory commitment procedure required by K.S.A. 2003 Supp. 22-3428 is unconstitutional as applied to her situation and results in cruel and unusual punishment. She argues that she has already received extensive treatment at OSH, she is currently under the care of Dr. Pikalov of the Wyandot Center for Community Behavioral Healthcare, Inc., she has been out on bond since January 2002 without incident, and she has served 108 days in custody for relatively minor crimes. Although this may have potentially been the defendant's strongest argument, her argument fails for several reasons, in large part because of her failure to provide a sufficient record on appeal.

The defendant was evaluated at OSH nearly a year before her acquittal to determine whether she was competent to stand trial. She was not evaluated at Larned to determine whether she was currently in need of treatment and likely to cause harm to herself or others at the time she was acquitted by reason of a mental disease or defect. This is important in light of Dr. Ryabik's evaluation 6 months before the defendant entered the plea that she deteriorates to the point of becoming psychotic when not on her medication, that her medication should be monitored on a daily basis, that she should be in psychotherapy, and that she is capable of being out of touch with reality when not on an efficient treatment regime. The State has a legitimate interest in determining whether a defendant acquitted by reason of mental disease or defect is safe to be back in the community.

The defendant argues she has been successfully under the care of Dr. Pikalov since released on bond, but she provides no evidence in the record of Dr. Pikalov's assessment of her mental status at the time she was adjudged not guilty by reason of mental disease or defect. Although the defendant alleges in her brief that she filed documentation with the trial court in support of her position, which was not made part of the record on appeal, the defendant failed to proffer this evidence in order to permit a meaningful review on

appeal. "Failure to make a proffer of excluded evidence precludes appellate review because there is no basis to consider whether the trial court abused its discretion." *State v. Evans*, 275 Kan. 95, 100, 62 P.3d 220 (2003). Without this evidence, this court is unable to determine whether the defendant was being committed to Larned when she was neither dangerous nor mentally ill. See *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998) (An appellant has the burden to designate a record sufficient to establish the claimed error.).

Although the defendant served several days in custody related to misdemeanor offenses, much of this time is attributable to the defendant in determining whether she was competent to stand trial. See *State v. Davis*, 277 Kan. 309, 333, 85 P.3d 1164 (2004) (Kansas authority charges any delay in the proceedings reasonably associated with a challenge to competency to the defendant.). Likewise, the additional time required to be spent in Larned for the precommitment evaluation is also charged to the defendant as a result of her decision to raise the insanity defense. See 277 Kan. at 333. As this time would be charged to the defendant for speedy trial purposes, it is difficult to conclude that the consequences of the defendant's choice to raise this defense, *i.e.* 90 days' evaluation at Larned, could constitute cruel and unusual punishment.

Moreover, even if all information relied upon by the defendant was made in the form of a proffer, the State would be entitled to a period of time not only to evaluate the evidence proffered but would also be entitled to have an examination of the defendant on the issue of mental illness, which in all likelihood would result in a request by the State to have such an evaluation and examination performed at the state security hospital. The present form of the statute contemplates a procedure whereby the court in a full evidentiary hearing receives information which allows it to make a reasoned response on the issue of whether such a defendant is presently mentally ill. Thus, we hold that the procedures and system set forth in the provisions of K.S.A. 2003 Supp. 22-3428 are constitutional as applied to the defendant in this case, and we affirm the order of commitment entered by the trial court.

Affirmed.