NOT DESIGNATED FOR PUBLICATION

No. 123,015

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES JAMERSON,
*Appellant*,

v.

JAMES HEIMGARTNER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed June 11, 2021. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, of Hutchinson, for appellee.

Before ATCHESON, P.J., GARDNER and WARNER, JJ.


PER CURIAM: James Jamerson has challenged how the Kansas Department of Corrections computed good time credit on his convictions for second-degree murder and two other felonies. In this habeas corpus action under K.S.A. 60-1501, Jamerson says the Department failed to follow its own regulations and deprived him of credit for 193 days of good time "withheld" and 145 days of good time "forfeited" for disciplinary infractions. The Reno County District Court dismissed the petition on procedural grounds but also considered and rejected Jamerson's argument on its merits. In this appeal, we focus on the merits and affirm the district court.

1

Jamerson filed this 60-1501 petition in Reno County in 2017, since he was then an inmate at the prison in Hutchinson. He was serving sentences for 2001 convictions for second-degree murder, conspiracy to commit aggravated robbery, and aggravated robbery. In 2016, Jamerson was resentenced on those convictions because his criminal history had been miscalculated, resulting in illegal sentences that were too long. See K.S.A. 2020 Supp. 22-3504(a) (correction of illegal sentences).

Jamerson then sought restoration of the good time credit that had been "withheld" or "forfeited" before his resentencing and cited part of K.A.R. 44-6-125(c) as supporting his claim. The pertinent language states: "In cases of a new sentence conviction, disciplinary offenses occurring before the effective date of the new sentence that result in the forfeiture of good time or program credits shall not be applied to the computation." K.A.R. 44-6-125(c). The Reno County District Court denied Jamerson relief on res judicata grounds because he had litigated and lost the same claim in a 60-1501 action he had filed in the Butler County District Court a year earlier when he was held at the prison in El Dorado. The Reno County District Court also found the claim to be without legal merit, essentially borrowing the rationale of the Butler County District Court.

Jamerson has appealed the Reno County District Court's ruling. As it has throughout this litigation, the Department has interposed various procedural arguments for dismissing this 60-1501 petition without reaching the merits. Most notably, perhaps, Jamerson was released from prison late last year to begin a period of postrelease supervision, mooting his claim for additional good time credit that would have shortened his incarceration. The Kansas Supreme Court has recently cautioned that mootness should be circumspectly applied to terminate litigation. See *State v. Roat*, 311 Kan. 581, 591-93, 466 P.3d 439 (2020). We reserve that circumspection for another day and reject by rote mootness as a basis for affirming the district court. Rather than work our way through the convoluted procedural history of the 60-1501 petitions Jamerson filed in Butler County District Court and Reno County District Court to explore the preclusion

bars the Department has argued, we weigh the merits of the claim. We have that option because the procedural defenses are jurisprudential rather than jurisdictional ones.

Judicial review of administrative regulations entails the same principles used to consider and apply statutes. See *Davis v. McKune*, 28 Kan. App. 2d 14, 16, 11 P.3d 503 (2000); cf. *Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 323, 291 P.3d 1056 (2013) (assessing constitutionality of administrative regulation "requires statutory interpretation"). The meaning of an administrative regulation presents a question of law, so we owe no particular deference to the district court's determination. *Woessner v. Labor Max Staffing*, 312 Kan. 36, 45, 471 P.3d 1 (2020).

The fundamental rule of statutory review commands that the courts give effect to the intent of the Legislature in enacting a statute or, here, the agency in promulgating a regulation. And that intent should be drawn from the plain meaning of the measure's language if at all possible. *State v. Smith*, 309 Kan. 929, 932-33, 441 P.3d 472 (2019). By the same token, courts should avoid imputing an unreasonable meaning to the language that would lead to an implausible or absurd result. *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015).

In applying those principles to K.A.R. 44-6-125(c), we assume the correctness of the factual predicate for Jamerson's 60-1501 petition: The Department deprived him of about 338 days of good time credit before 2016 as punishment for rules infractions and but for that loss of good time he would have been placed on postrelease supervision sooner. Jamerson contends that when he was resentenced in 2016 to correct his original illegal sentences, he got "a new sentence conviction" within the meaning of K.A.R. 44-6-125(c). So, his argument goes, the earlier disciplinary losses of good time credit should not count against the new sentences he received for the 2001 convictions.

As a matter of judicial review, we see the argument turning on the meaning of the phrase "a new sentence conviction." It is neither a defined term nor one of art in the sentencing statutes or the Department's regulations. As far as we can tell, the phrase appears only in K.A.R. 44-6-125(c). We see the language as an administrative or bureaucratic shorthand for the idea that a prisoner with a new conviction and sentence cannot have existing reductions of good time counted against that sentence. In other words, prisoners with new convictions will receive full good time credit against those sentences, assuming they otherwise abide by the Department's rules and regulations and incur no disciplinary infractions going forward.[*]

[*]At least two obvious scenarios would result in that sort of "new sentence conviction" for someone already in prison. In the first, the inmate is convicted of a crime he or she has committed while incarcerated and serving a sentence on an earlier conviction. The second would be a recent prosecution and conviction of an inmate for a crime he or she committed outside prison distinct from the crime and conviction resulting in his or her incarceration. The proverbial "cold case" prosecution would be an example. Those circumstances would result in "new sentence convictions" under K.A.R. 44-6-125(c).

A more complicated scenario would arise if an inmate's conviction were reversed (and the sentence vacated, as a result) and he or she were then convicted in a retrial or following a guilty plea. The result would be both a new conviction and a new sentence. We offer no opinion on that situation or how it would be treated under the Department's regulations generally or K.A.R. 44-6-125 specifically. Jamerson's circumstance is legally and factually different, since his 2001 convictions remained in effect, only the sentences were modified.

In looking at only K.A.R. 44-6-125, we concede we fail to see what linguistic or legal work the word "sentence" does as an adjunct to "new conviction" in subsection (c). That is, the phrase "a new conviction" would seem to be synonymous with "a new sentence conviction." At first blush, a new conviction would necessarily result in a new sentence. If the regulation referred to only "a new conviction," Jamerson's argument would have absolutely no traction. He had no new convictions.

A canon of construction recognizes that words of a statute (or a regulation) should not be rendered surplusage. See *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage."). But that is a secondary rule of statutory review that must yield to avoid unreasonable outcomes. See *KPERS v. Reiner & Koger Assocs., Inc.*, 262 Kan. 635, 644, 941 P.2d 1321 (1997) (clear legislative intent given effect even if statutory words or phrases omitted as result); *State v. Schreiner*, 46 Kan. App. 2d 778, 784, 264 P.3d 1033 (2011) (canon against surplusage "one aid" rather than "cardinal" rule in reviewing statutory language).

On examination, Jamerson's interpretation of K.A.R. 44-6-125(c) neither obviously follows from the language he relies on nor advances an arguably reasonable application of that language. Nothing about the admittedly odd phrase "a new sentence conviction" supports the idea that an inmate resentenced to correct an originally unlawful sentence should also receive a dispensation for good time credit lost as punishment for disciplinary violations in prison. The two—correction of an original sentence and restoration of good time credit taken to punish a rules infraction in prison—have no direct or even indirect connection. A new lawful sentence provides a criminal defendant with a fair and complete remedy for an illegal original sentence. Reversing an otherwise proper loss of good time for a violation of prison rules would be wholly gratuitous to remedying an illegal sentence. Doing so would serve no readily apparent penological purpose or public policy interest. In short, we see nothing to suggest the Department had the intent Jamerson would impute to it with his reading of K.A.R. 44-6-125(c). And the language of K.A.R. 44-6-125(c) does not ineluctably require that otherwise seemingly inexplicable result.

The district court correctly assessed Jamerson's argument as lacking any substantive merit. We affirm the dismissal of the 60-1501 petition on that basis.

Affirmed.