MODIFIED OPINION[1]

NOT DESIGNATED FOR PUBLICATION

No. 126,233

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of Y.B. and L.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD A. MACIAS, judge. Submitted without oral argument. Original opinion filed February 2, 2024. Modified opinion filed March 29, 2024. Affirmed.

*Rachel N. Gonzales*, of Morris Laing Law Firm, of Wichita, for appellant natural mother.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ATCHESON, P.J., MALONE and BRUNS, JJ.

PER CURIAM:  A.S. appeals the Sedgwick County District Court's order terminating her right to parent Y.B. and L.B., her two youngest children, and principally argues the evidence does not support the finding she is unfit. The termination proceedings were unusual in that the district court relied heavily on evidence showing A.S.'s continuing inability to care for her eldest daughter, who was the subject of an earlier action in which she relinquished her parental rights. Unusual, however, does not translate

---

[1]**REPORTER'S NOTE**:  Opinion No. 126,233 was modified by the Court of Appeals in response to the State's motion for rehearing or modification filed February 6, 2024. Concurrences have been added.

1

into erroneous. A.S. has failed to demonstrate any sound basis for reversing the district court, and we, therefore, affirm the termination order.

We issued an opinion affirming the district court on February 2, 2024, and the State timely filed a motion for rehearing or modification on two legal points. A.S. did not file a response. We address both points in this modified opinion and find them unavailing. The outcome and our overall reasoning remain unchanged. Given the issues, we find oral argument would be unhelpful.

FACTUAL AND PROCEDURAL HISTORY

The precipitating event in this case occurred in late March 2022, when Haysville police conducted a welfare check on Y.B., who was then about three years old, and her brother L.B., who was about a year younger. At the time, A.S. was residing with her brother in a house they jointly inherited from their mother. A.S. left her brother to care for the children while she was at work or otherwise out. The officers found the children had been placed in a bedroom with the door fastened shut using a telephone charging cord. A.S. was not at home. Later, A.S. and her brother each blamed the other for locking the children in the room. The children indisputably had been confined all morning and much of the afternoon. They had relieved themselves during that time without being cleaned up and apparently had had nothing to eat or drink since being placed in the room. The officers took Y.B. and L.B. into protective custody. They noted the bedroom was in disarray, dirty, and smelled of urine and feces. Upon examination at a local hospital, both children showed signs of continuing neglect:  They had bruises in various stages of healing, red marks, and scratches; severe diaper rash; and rashes on other parts of their bodies.

The district court ordered that Y.B. and L.B. be placed in temporary state custody. Several days after Y.B. and L.B. were taken into protective custody, the district attorney's

office filed petitions to have them declared children in need of care. The same day as those petitions were filed, A.S. relinquished her parental rights to her daughter X.B. in a child in need of care proceeding that had begun in 2019 shortly after X.B.'s birth. See K.S.A. 38-2268(a) (during child in need of care proceeding, parent may voluntarily relinquish parental rights). A.S. testified that Z.S., her oldest child, lives with his father; Z.S. is not involved in these proceedings.

The district court handled the proceedings involving Y.B. and L.B. in tandem, and we have consolidated them for appeal. Y.B. and L.B.'s father relinquished his parental rights to both children, so he neither participated in the termination hearing in the district court nor joined in this appeal.

The district court adjudicated Y.B. and L.B. to be children in need of care in late May 2022, and given A.S.'s lackluster performance in meeting many of the substantial objectives in the family reunification plan for X.B., the district court declined to order a reunification plan for them. Rather, the district court directed the State to file motions for termination of A.S.'s parental rights and directed St. Francis Ministries, the designated social service agency, to provide A.S. with a 90-day "achievement" plan. We have little reason to conclude there was much difference between the objectives of the achievement plan and a typical reunification plan. The parties have not suggested otherwise. But the timeframe would be unusually short for family reunification, as A.S. has pointed out.

The State filed the motions to terminate in mid-June. The district court heard evidence at the termination hearing over three days in mid-November and early December. The district court made a bench ruling terminating A.S.'s parental rights in mid-January 2023 and filed a corresponding journal entry of termination about two months later.

3

At the termination hearing, the State called as witnesses A.S., case managers from St. Francis Ministries assigned to work with A.S. in these cases and in X.B.'s case, two other employees of the social service agency, and A.S.'s treating therapist. At the end of the hearing, A.S. testified on her own behalf but called no other witnesses. The district court admitted various documents into evidence, including status reports from St. Francis Ministries and the therapist, and took judicial notice of the case file pertaining to X.B. and the case file of a criminal prosecution of A.S. in which she pleaded guilty to two counts of aggravated child endangerment based on the conditions that led to Y.B. and L.B. being taken into protective custody.

The evidenced presented during the termination hearing showed:

• Based on home visits in the months before the law enforcement welfare check in March 2022, case workers found A.S.'s residence cluttered with garbage, dirty dishes, and rotting food, and the garage was littered with animal feces. On one visit, the case worker also saw A.S. take Y.B. and L.B. out in cold weather without shoes and otherwise underdressed for the conditions. (This evidence invites an inquiry as to why the social service agency or the State did not then actively intervene to protect Y.B. and L.B. The answer is neither relevant to the issues on appeal nor readily apparent from the record before us.)

• A.S. testified that she considered her brother to be an unreliable caregiver for Y.B. and L.B. and wanted to hire a babysitter. But A.S. had purchased a comparatively expensive car and had fallen behind in making the payments, so she doubled-up on those payments and decided she had no money for childcare. Notwithstanding those financial pressures, A.S. acknowledged she purchased four snakes and a reptile for about $1,000 several months before the termination hearing because she was depressed. The car was repossessed shortly before the start of the hearing.

4

• After Y.B. and L.B. were taken into protective custody, A.S. moved in with her boyfriend in a house his mother owned. The evidence indicates A.S. and her boyfriend had a sometimes volatile relationship that may have involved instances of abusive physical contact. A.S. financially supported her boyfriend who apparently was chronically unemployed. According to A.S., her boyfriend's mother did not want Y.B. and L.B. living in the house. So at the time of the termination hearing, A.S. had no housing suitable for family reunification and no plan for securing such housing.

• At the start of the termination hearing, A.S. testified she had not visited with Y.B. or L.B. for about five months. She testified that she believed the district court had entered a no-contact order in the criminal case filed against her that remained in effect until October 13, 2022. But A.S. agreed she had not requested visits with the children since then because she was trying to improve her mental outlook. She described herself as "gloomy" and needing to get to "unbeing depressed." In that regard, A.S. said her first priority was to get another car and then to resume visits with the children. Overall, A.S. conceded she was not ready to assume custody of Y.B. and L.B.; she estimated she would require another six months to get things in place for full reunification.

• Although A.S. had been gainfully employed in the same job for an extended period, the district court concluded she was not in a position to financially support Y.B. and L.B. in a reliable way. The district court pointed to poor financial decisions A.S. had made over the course of the cases involving each of her children—buying a car she couldn't afford, spending a large amount on exotic pets, and continually supporting her boyfriend when he appeared to be capable of working—and noted the social service agency's unsuccessful efforts to get her to budget responsibly.

In making its bench ruling on termination, the district court said it was relying on the statutory grounds of unfitness the State had alleged in its motion to terminate, except for the presumption under K.S.A. 38-2271(a)(3). The district court concluded the

evidence did not establish the predicate fact supporting that presumption. The district court recited the other grounds as parental unfitness under K.S.A. 38-2269(b)(2), (b)(3), (b)(7), and (b)(8) and under K.S.A. 38-2269(c)(2) based on the children having been in an extended out-of-home placement. In citing subsections (b)(3) and (c)(2), the district court misspoke. The State actually requested termination under subsections (b)(4), and (c)(3). The journal entry of termination reflected the correct subsection (b)(4), but also included the incorrect subsection (c)(2) the district court orally identified. Six months later, the district court filed an order correcting the journal entry reference from K.S.A. 38-2269(c)(2) to (c)(3).

Relying heavily on evidence from the proceedings involving X.B.—showing that A.S. had failed to make substantial progress on many components of the family reunification plan crafted in that case over the course of several years—the district court concluded the conditions of unfitness pertaining to Y.B. and L.B. were unlikely to change in the foreseeable future. The district court also found that under the circumstances, termination of A.S.'s parental rights was in the best interests of the children. A.S. has appealed the ruling terminating her parental rights.

LEGAL ANALYSIS

On appeal, A.S. primarily challenges the sufficiency of the evidence supporting the district court's statutory findings of unfitness and secondarily disputes the conclusion that those conditions were unlikely to change in the near term. In taking up those issues, we first outline pertinent legal principles governing the termination of parental rights and then consider the evidentiary record in light of those principles.

*Outlining the Legal Principles*

A person has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right entails a protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive fundamental liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., to codify processes for finding children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home for an extended time, the additional factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find A.S. unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f). A district court may independently find a parent unfit based on any of 13 statutory presumptions in K.S.A. 38-2271(a). As we have said, the district court expressly declined to rely on the one presumption the State cited in its motion for termination.

7

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in termination of parental rights proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual disputes. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests determination is governed by a less stringent standard. As directed by K.S.A. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that

broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018); *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

*Applying the Legal Principles*

As this court has recognized, some of the statutory grounds for unfitness overlap. *In re A.T.*, No. 125,654, 2023 WL 3667581, at *6 (Kan. App. 2023) (unpublished opinion) ("As we often point out, the statutory grounds of unfitness tend to overlap and the evidence supporting one often will support others."); *In re B.C.*, No. 125,199, 2022 WL 18046481, at *4 (Kan. App. 2022) (unpublished opinion). We consider the district court's findings of unfitness in that light.

The district court found A.S. unfit under both K.S.A. 38-2269(b)(2), applicable when a parent directs "conduct toward a child of a physically, emotionally or sexually cruel or abusive nature," and K.S.A. 38-2269(b)(4), applicable when a parent acts in a way causing "physical, mental or emotional abuse or neglect or sexual abuse of a child." The two subsections look at forms of parental behavior having largely the same kinds of detrimental effects on a child. Subsection (b)(2) finds unfitness based on a parent's "conduct," strongly suggesting intentional actions that harm a child in one of the proscribed ways. Subsection (b)(4) entails the same sort of actions in basing unfitness on abuse, but it goes further than subsection (b)(2) by including "neglect," thereby covering inaction or inadvertent rather than deliberate actions injurious to a child.

The record here arguably does not depict A.S. as engaging in deliberately cruel or abusive conduct aimed at Y.B. and L.B. For example, she did not beat the children or purposefully withhold food from them for extended periods as a misguided means of

punishment. But A.S. plainly exposed the children to an unhealthful home environment for some time and either left them in the care of an adult who confined them in a room without food or facilities for much of the day or did so herself in the absence of a suitable caregiver. Either way, A.S. was neglectful of Y.B. and L.B.'s basic physical needs in a manner that rendered her unfit. Her behavior similarly would have been neglectful of the children's emotional need for a protective and nurturing environment. Accordingly, there was sufficient evidence to support the district court's finding of unfitness under K.S.A. 38-2269(b)(4).

We may similarly consider the district court's findings of unfitness under K.S.A. 38-2269(b)(7) and (b)(8) in tandem. Under subsection (b)(7), a parent may be found unfit when a social service agency's "reasonable efforts" have failed to "rehabilitate the family." And under subsection (b)(8), unfitness may be based on a parent's "lack of effort" to change his or her behavior or circumstances "to meet the needs of the child." Frequently, an agency is unable to reunify a family precisely because either parent or both will not modify behaviors, such as substance abuse, or conditions, such as unsafe housing, that effectively preclude restoration. That common scenario constitutes "unfitness" as described in both subsection (b)(7) and subsection (b)(8).

Here, A.S. never provided a suitable residence for herself and Y.B. and L.B., despite the social service agency's efforts to assist her. Suitable housing requires both adequate space for the children and some degree of stability, as evidenced by the parent's ongoing possession of the premises in contrast to living with roommates or significant others at their sufferance. See *In re M.S.*, 56 Kan. App. 2d at 1260-61 (After being evicted from her apartment, mother "bounced between" living with her own mother and grandmother and, therefore, lacked sufficient housing for family reunification with her two children.); *In re A.T.*, 2023 WL 3667581, at *6 (residence of sufficient size necessary for reunification); *In re A.E.*, No. 117,585, 2017 WL 5616743, at *5 (Kan. App. 2017) (unpublished opinion) (parent must demonstrate some history of stable housing). The

10

housing, likewise, must be safe, meaning the premises themselves are relatively clean and free of physical hazards and no regular occupant poses a danger to the children. See *In re A.T.*, 2023 WL 3667581, at \*6 (residence unsafe because mother permitted adult half-brother of minor children to live there even though he directed violent outbursts or physically abusive conduct toward her and some of his half-siblings); *In re J.E.*, No. 119,943, 2019 WL 1087037, at \*3, \*7 (Kan. App. 2019) (housing must be reasonably clean and free of insect or rodent infestation). The evidence established the house A.S. owned with her brother was unsafe and, thus, unsuitable for Y.B. and L.B. And the house she shared with her boyfriend was inadequate because the owner (boyfriend's mother) would not permit the children to live there.

At the termination hearing, A.S. admitted to having no tangible plan for obtaining suitable housing, prompting her to suggest she needed more time to regain custody of Y.B. and L.B. The hearing evidence showed that when law enforcement officers took X.B. into protective custody in April 2019, the house the child shared with A.S. was filthy and had unsecured objects that posed a physical danger to her, given her young age. Those circumstance replicated some of the conditions that prompted officers to remove Y.B. and L.B. from A.S.'s home almost three years later.

The chronology shows that A.S. could not or would not improve her children's home environment. After A.S.'s two youngest children were temporarily placed with the State, she did not secure appropriate housing and simply squandered the time leading up to the termination hearing. We find no fault with the district court's conclusion that the evidence showed A.S. failed to change her circumstances to accommodate the needs of the children for suitable housing and the social service agency's reasonable efforts in that respect were unsuccessful. Given the central importance of adequate housing to family reunification, the district court properly found A.S. to be unfit under K.S.A. 38-2269(b)(7) and (b)(8). See *In re A.T.*, 2023 WL 3667581, at \*6 (characterizing "suitable housing" as "integral component[]" of family reunification plan).

11

The hearing record similarly shows that A.S. appeared to be unable to adjust her circumstances to meet the financial needs of a reunified family coupled with a complementary failure of the social service agency to effect rehabilitation. Typically, a parent's financial instability is the result of irregular employment or continuing unemployment, sometimes tied to other conditions like drug abuse or mental health issues. Here, however, A.S. had a regular job with good wages. But she was unable to prioritize her spending and to budget to meet the needs of her children. As the district court found, A.S. bought a high-priced car and fell behind on the payments, limiting her financial resources for childcare or acquiring better housing. She also spent a large amount on new pets in the months leading up to the termination hearing, reflecting what the district court found to be a poor set of priorities. And A.S. continually subsidized her unemployed boyfriend. So A.S. regularly made bad choices in spending her money, leaving her with insufficient resources to adequately care for her children. That, too, entails unfitness under K.S.A. 38-2269(b)(8) and likely (b)(7).

In sum, we are persuaded that the evidence presented at the termination hearing, viewed in the State's favor, could have convinced a rational fact-finder it was highly probable A.S. was unfit under K.S.A. 38-2269(b)(4), (b)(7), and (b)(8). That is, the State presented clear and convincing evidence of unfitness on those statutory grounds. The evidence may fall short of establishing the requite deliberateness contemplated in K.S.A. 38-2269(b)(2), but any failure of proof on that ground would not change the ultimate outcome.

For the same reason, we need not formally address the district court's finding of unfitness based on K.S.A. 38-2269(b)(9), incorporating subsection (c)(3). In combination, those provisions permit a district court to find a parent unfit for failing to carry out a reasonable plan for family reunification when the child has been in State custody and an out-of-home placement for 15 of the most recent 22 months, counting

12

from 60 days after removal of the child from the home. When a district court has removed a child from the home and placed the child in temporary State custody, the time period in subsection (b)(9) must be satisfied to consider one of the circumstances in subsection (c) as a ground for parental unfitness. In its motion for reconsideration, the State contends the time period is not a necessary condition for finding unfitness under subsection (c). We disagree. Subsection (b)(9) specifically refers to children placed in State custody. The State's suggested reading would render subsection (b)(9) and its time period statutorily superfluous. *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage.").

Here, Y.B. and L.B. were removed from A.S.'s home and custody in late March 2022, and placed in State custody. The termination hearing began in mid-November 2022. It is not readily apparent how the 15-month period for out-of-home placement would apply to Y.B. and L.B., so unfitness could not be shown as a matter of law under K.S.A. 38-2269(c)(3). Although we assume the finding to be mistaken, our assumption makes no difference in the disposition of A.S.'s appeal. The circumstances here do not require us to consider subsection (c) when a child is not in temporary State custody, and we offer no suggestion on how it should then be applied.

On appeal, A.S. offers a short suggestion that the evidence fails to show any unfitness on her part was unlikely to change in the foreseeable future. A.S. rests her position on the district court's decision to move promptly to a termination hearing as to Y.B. and L.B. and directing she be given only 90 days to accomplish an achievement plan. The argument, such as it is, ignores the hearing evidence related to the child in need of care proceeding involving X.B. A.S. does not dispute the admission of that evidence, and we see don't see any relevance or foundation problems with the testimony from the case manager involved in that proceeding and the associated records.

As we have already explained, X.B.'s case ended after about three years when A.S. voluntarily relinquished her parental rights, just as the cases involving Y.B. and L.B. were filed in March 2022. A.S.'s documented lack of progress in X.B.'s case, particularly pertinent here in failing to secure suitable housing, strongly supports the district court's conclusion that more time would not have salvaged the family. By the time of the termination hearing, A.S. had roughly three and a half years to establish an adequate home for herself and the children. Not to put too fine a point on it, she failed miserably at that essential task. Nothing in the evidence suggested some remarkable turnaround was in the offing or, really, at any foreseeable point even on the distant horizon.

Taking account of child time, as we and the district court must, and the young ages of Y.B. and L.B., we find no error in the district court's conclusion on this component of the termination standard. The conclusion is buttressed by, though not dependent upon, A.S.'s persistent financial difficulties directly traceable to her apparent inability to budget and otherwise responsibly handle her income notwithstanding the continuing efforts of the social service agency.

Although on appeal A.S. had not disputed the district court's finding that the best interests of Y.B. and L.B. support termination, we turn briefly to the issue in the interest of completeness. We consider a district court's best interests ruling under the deferential abuse of discretion standard. What we have outlined to this point foretells a finding of no abuse of that broad judicial authority. The conditions in which Y.B. and L.B. were living in March 2022—and presumably for much, if not all, of their short lives given the circumstances prompting the State's intervention with their older sister in 2019—could be fairly characterized as unhealthful to the point of being injurious to their well-being. The specific circumstances prompting their removal from the house likewise can be fairly characterized as physically and emotionally damaging.

14

Taken favorably to the State, the evidence shows A.S. persistently kept Y.B. and L.B. in conditions so far removed from a safe, nurturing home environment as to be, at best, deplorable and, more accurately, shocking. And the district court had every reason to conclude A.S. simply could not or would not grasp what she needed to do to provide an appropriate home for her children. Given the centrality of suitable housing to the welfare of children generally and the overarching legislative policy making "the ongoing physical, mental and emotional needs of the child decisive considerations in proceedings" under the Code, we cannot say the district court stepped outside its broad discretion in concluding termination of A.S.'s parental rights served the best interests of Y.B. and L.B. K.S.A. 38-2201(b)(3) (outlining public policies behind Code).

In closing out our review, we mention that A.S. has included an argument in her brief that the district court erred in finding her unfit based on the presumption in K.S.A. 38-2271(a)(3). The point is inapposite. While the State raised the presumption as a ground for unfitness in its motion to terminate A.S.'s parental rights, the district court explicitly rejected that ground in its bench ruling, and the journal entry of termination does not mention the presumption in laying out the statutory bases for termination.

In its motion for reconsideration, the State submits the presumption would apply in this case. We find the argument unpersuasive. The presumption of unfitness is triggered if a parent has had a child adjudicated as being in need of care "on two or more prior occasions" on particular grounds identified in K.S.A. 38-2202(d). K.S.A. 38-2271(a)(3). The State argues that the adjudications of Y.B. and L.B. in these cases count along with the adjudication of X.B. in the earlier case to satisfy the factual predicate of two "prior" adjudications. But there must be an adjudication of the child as being in need of care in every case that reaches a termination hearing. If the district court were to find no basis for adjudication, it would be obligated to dismiss the case at that stage. K.S.A. 38-2251(a). So the State essentially argues that an adjudication in one earlier case will support the presumption in K.S.A. 38-2271(a)(3).

15

The argument does considerable linguistic violence to the meaning of "prior." See Webster's New World College Dictionary 1158 (5th ed. 2016) (defining "prior" as "earlier; previous; former"); Black's Law Dictionary 1444 (11th ed. 2019) (defining "prior" as "preceding in time"). Giving the phrase "prior occasions" its common meaning would naturally refer to occasions before this one—that is, "previous" ones. The statutory reference, then, entails two adjudications in cases preceding the adjudication made in the pending child in need of care case. The State's contrary position collides with the settled canon that we give the words of a statute their common or usual meanings unless the Legislature has provided special definitions. See *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017) (absent statutory definition, words in statute should be given their usual dictionary meaning).

Affirmed.

\* \* \*

MALONE, J., concurring:  I concur with the result reached in the modified opinion that the district court's termination of A.S.'s parental rights to Y.B. and L.B. should be upheld. But I disagree with the majority's interpretation of the interrelationship between the grounds for parental unfitness set forth in K.S.A. 38-2269(b)(9) and K.S.A. 38-2269(c). More specifically, I disagree with the majority's finding that "[w]hen a district court has removed a child from the home and placed the child in temporary State custody, the time period in subsection (b)(9) must be satisfied to consider one of the circumstances in subsection (c) as a ground for parental unfitness." Slip op. at 12. Based on the plain statutory language, I do not believe there is a need for out-of-home placement for 15 of the most recent 22 months for the district court to make a finding of unfitness under one of the factors in subsection (c). The grounds for unfitness under subsection (c) apply

16

when a child is not in the physical custody of a parent. That prerequisite distinguishes the grounds for unfitness under subsection (c) with the grounds under subsection (b).

This interpretation does not render K.S.A. 38-2269(b)(9) superfluous. K.S.A. 38-2269(b)(9) and K.S.A. 38-2269(c) are separate factors for a district court to consider in determining whether a parent is unfit. There can never be a finding of unfitness under subsection (b)(9) unless one of the factors under subsection (c) applies. But the converse is not true; there can be a finding of unfitness under one of the factors in subsection (c) without a finding under subsection (b)(9). Proof under subsection (b)(9) is more strenuous because it includes the additional requirement of state custody with out-of-home placement for 15 of the most recent 22 months. This explains why the State did not seek to terminate A.S.'s parental rights under subsection (b)(9).

The legislative history of K.S.A. 38-2269 supports this interpretation of the two subsections. Language substantially the same as K.S.A. 38-2269(c) has been on the books since 1982. See L. 1982, ch. 182, § 54. Language substantially similar to K.S.A. 38-2269(b)(9) was not added to the statute until 2008. See L. 2008, ch. 169, § 19. The fact that subsection (c) was enacted 26 years before subsection (b)(9) negates any interpretation that the time period in subsection (b)(9) must be satisfied to consider one of the circumstance in subsection (c) as a grounds for parental unfitness.

K.S.A. 38-2269(b) and (c) both set forth factors the court shall consider in determining parental unfitness. The explanatory language in the two subsections is nearly the same and does not have a significant effect on the interpretation. Subsection (b) includes a nonexclusive list of factors the court shall consider, if applicable, in making a determination of unfitness. Subsection (c) begins by stating:  "In addition to the foregoing . . . ." The nonexclusive factors included in subsection (c) are additional grounds the court shall consider in determining unfitness; but these factors only apply when a child is not in

17

the physical custody of a parent. That is the distinction between subsection (b) and subsection (c).

Here, the district court found A.S. unfit under K.S.A. 38-2269(c)(3) for failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home. This finding was supported by clear and convincing evidence. Even though A.S. was only given a 90-day "achievement" plan to reintegrate with Y.B. and L.B., the district court properly considered A.S.'s unsuccessful efforts toward reintegration in X.B.'s case that had extended for about 3 years before A.S. voluntarily relinquished her parental rights to X.B. And even though a motion for termination was filed around 90 days after Y.B. and L.B were removed from the home, the hearing did not begin for another 5 months, so A.S. had more than 90 days to work toward reintegration. During this time, A.S. was involved in a volatile relationship with her boyfriend, was making poor financial decisions, and was making no effort to overcome her depression. At the time of the termination hearing, A.S. had no housing suitable for family reunification and no plan for securing such housing. The district court did not err in finding A.S. unfit to parent her children under K.S.A. 38-2269(c)(3).

* * *

ATCHESON, J., concurring: The State's motion for reconsideration has prompted a discussion of the interplay of subsections (b) and (c) of K.S.A. 38-2269 governing parental unfitness under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq.—an exercise that has no effect on the outcome here affirming the Sedgwick County District Court's decision to terminate A.S.'s parental rights. Because the relationship between the conditions listed in subsection (c) and the grounds for unfitness listed in subsection (b) is a recurring one, I offer my take on how they should be read and pose a counterpoint to Judge Malone's concurring opinion.

18

The State sought to terminate A.S.'s parental rights for several reasons, including a claim that she was unfit because she had failed to carry out a reasonable plan for family reintegration as listed in subsection (c)(3). We affirmed the district court's finding of unfitness on other grounds and its ultimate decision to terminate A.S.'s rights. The majority held that when children have been removed from the home and placed in temporary State custody—as happened here—the circumstances identified in subsection (c) may be considered grounds for unfitness only if the time constraints in subsection (b)(9) have been satisfied. And the record clearly established A.S.'s children had not been in an out-of-home placement for 15 of the 22 months preceding the termination hearing counting from 60 days after their removal from the home, as required under subsection (b)(9). We, therefore, simply declined to consider that part of the district court's decision in affirming the termination order and specifically chose not to discuss how the two subsections may interact when a child is neither in the physical custody of a parent nor in the temporary custody of the State.

I agree with the majority opinion, as far as it goes. That is, the time period in subsection (b)(9) is a necessary condition to find a parent unfit based on any of the criteria in subsection (c) when a child has been placed in temporary State custody. And we do not need to say any more given the facts of this case. Judge Malone disagrees with the first point, and to explain why, he delves into the second. Essentially, Judge Malone concludes the criteria in subsection (c) are freestanding grounds establishing parental unfitness that a district court can consider at any time. Although K.S.A. 38-2269 is hardly a model of statutory drafting, I read the language otherwise: The four circumstances in subsection (c) establish parental unfitness *only* when a child has been placed in State custody for the time period defined in subsection (b)(9). Otherwise, the district court may consider those circumstances to augment or enhance the grounds of unfitness identified as such in K.S.A. 38-2269(b). I come to that conclusion for these reasons:

19

• To terminate a parent's rights under K.S.A. 38-2269(a), a district court must find the parent "unfit" and that the condition of unfitness is "unlikely to change in the foreseeable future." In K.S.A. 38-2269(b), the Legislature has identified nine specific grounds of unfitness with this introductory language: "In making a determination of unfitness the [district] court shall consider, but is not limited to, the following, if applicable." So those grounds are sufficient to find unfitness, although other circumstances may be considered. Similarly, in K.S.A. 38-2269(d), the Legislature directed that "[a] finding of unfitness may be made" when a parent has abandoned a child, has statutorily relinquished his or her parental rights, or cannot be identified despite "diligent searching." And in K.S.A. 38-2269(e), the Legislature provided that "a finding of unfitness may be made" in particular circumstances involving sexual abuse.

But the descriptive language in K.S.A. 38-2269(c) is different. The Legislature instructed that "'[i]n addition to the foregoing, when a child is not in the physical custody of a parent, the court, shall consider, but is not limited to the following:" and lists four circumstances. Subsection (c) does not direct that a finding of unfitness may be based on any of those circumstances. In reading the statute, we should give the difference in language and the omission of an explicit reference to findings of unfitness in subsection (c) some meaning unless doing so would be wholly unworkable within the statutory scheme or otherwise patently unreasonable. Here, it is neither. See *Law v. Siegel*, 571 U.S. 415, 422, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) (applying ""'normal rule of statutory construction'"" recognizing that "words repeated in different parts of the same statute generally have the same meaning"); *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (use of different terms within statute demonstrates legislative intent to convey different meanings); *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statute "to avoid unreasonable or absurd results"); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007) (judicial reading should avoid adding something to statutory language or negating something already there).

20

Moreover, had the Legislature intended the enumerated paragraphs in subsection (c) to be treated as sufficient grounds for unfitness comparable to those in subsection (b), that's where they would be. Subsection (b) simply would be longer, and there would be no separate subsection (c). The Legislature's avoidance of an obvious and logical way to accomplish that result strongly suggests some other intent and purpose in fashioning subsection (c) as it did. We would, in effect, be rewriting the statute if we were to functionally merge subsection (c) into subsection (b) by treating them as legally equivalent.

• If the criteria in subsection (c) were freestanding grounds for finding a parent unfit, then subsection (b)(9) would serve no independent purpose, since subsection (b)(9) incorporates subsection (c) by reference and adds a requirement that the child have been in temporary State custody and placed with neither parent for 15 of the preceding 22 months leading up to the termination hearing. So proof of a basis for unfitness under subsection (b)(9) would necessarily require proof of a basis under subsection (c). Were that reading the right one, subsection (b)(9) would add nothing to the statutory outline of grounds of unfitness, and it would seem to typify a superfluous or vestigial statutory provision. We, of course, should avoid rendering statutory language a nullity if at all possible—a canon that ought to be redoubled when a proposed reading would negate an entire section of a statute rather than a word or phrase. See *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage."); *Aql v. Peterson*, No. 125,038, 2023 WL 3408761, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 317 Kan. 843 (2023).

The Legislature added subsection (b)(9) to K.S.A. 38-2269 in 2008, although the subsection then referred to a child "in extended out of home placement"—a defined term meaning in temporary State custody for 15 of the most recent 22 months. See K.S.A.

21

2023 Supp. 38-2202(n) (defining extended out of home placement). The subsection was amended in 2018 to replace the defined term with the definition itself, a nonsubstantive change. In all other respects, K.S.A. 38-2269 has remained the same since the revised code was enacted in 2006. It seems improbable the Legislature intended to amend K.S.A. 38-2269(b) in a way that functionally did nothing when it adopted subsection (b)(9). And we would be remiss if we came to that conclusion unless we had no other choice. Here, we do.

• What, then, does K.S.A. 38-2269(c) do? A district court *may* find a parent unfit if the State proves one or more of the grounds of unfitness in K.S.A. 38-2269(b). But the district court need not do so. K.S.A. 38-2269(b) ("In making a determination of unfitness, the court shall consider . . . the following:"). In other words, proof of a statutory ground permits a finding of unfitness but does not mandate the finding. Subsection (c) identifies circumstances a district court should consider in making the permissive determination of unfitness after the State has otherwise established one or more of the grounds in subsection (b). Those circumstances become an extra weight on the side of the scales favoring a finding of unfitness. By their nature, they logically contribute to a finding of unfitness.

For example, a parent may be found unfit based on a felony conviction and imprisonment under K.S.A. 38-2269(b)(5). But a district court could conclude no finding of unfitness should be made because the period of incarceration would be comparatively short and the parent had already established a sound and continuing relationship with the child. See *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014); see also *In re T.H.*, 60 Kan. App. 2d 536, 548, 494 P.3d 851 (2021). One of the criteria in K.S.A. 38-2269(c) is the parent's "failure to maintain regular visitation, contact[,] or communication with the child." K.S.A. 38-2269(c)(2). So a district court could weigh the incarcerated parent's failure to communicate with the child in any of the ways the prison permitted. Depending on the circumstances, that failure might be enough to tip the case to a finding

22

of unfitness under subsection (b)(5). See *In re A.P.*, No. 121,537, 2020 WL 499816, at *4-5 (Kan. App. 2020) (unpublished opinion); *In re K.O.*, No. 116,704, 2017 WL 2403304, at *4-5 (Kan. App. 2017) (unpublished opinion).

In short, K.S.A. 38-2269(c) serves a useful purpose in identifying circumstances that would tend to bolster a permissive finding of unfitness under K.S.A. 38-2269(b) and, thus, in channeling the district court toward criteria the Legislature viewed as especially worthy of consideration for that purpose. I would impute that function to subsection (c) rather than treating the criteria as independent grounds supporting a finding of unfitness in the first instance—a function that would leave subsection (b)(9) with no useful purpose.

\* \* \*

BRUNS, J., concurring: I concur in the result based on the rationale expressed in the majority opinion.